[No. 7212. Decided April 13, 1908.]

H. W. MARTIN, *Respondent*, v. AMOS ABBOTT MOORE, *Appellant*, MARY PRESTON *et al., Defendants.*[1]

WILLS—CONSTRUCTION—ESTATE DEVISED—TRUSTS — DESCENT AND DISTRIBUTION—RIGHTS OF LEGATEES AND EXECUTOR. The title to lots does not vest in legatees upon the death of the testator, as provided by Bal. Code, § 4640, in the case of a devise, where a nonintervention will provides that one-half of the proceeds of the interest in certain lots remaining unsold at the testator's death shall "when sold" belong to a daughter, and the other half to be invested to make a fund for a son on arriving at majority; since the intention is clear, and is to be implied, that the lots were to be conveyed and the proceeds divided by the executor, who is a trustee for all purposes necessary to execute the will.

Appeal from a judgment of the superior court for Whitman county, Chadwick, J., entered September 4, 1907, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to quiet title. Affirmed.

*Lester S. Wilson,* for appellant.

*John L. Sharpstein* and *T. P. & C. C. Gose,* for respondent.

[1]Reported in 94 Pac. 1087.

HADLEY, C. J.—This is an action to quiet title to real estate, described as lot 1, block 40, in the city of Pullman, Whitman county. The plaintiff alleges that he is the owner of the land in fee simple, and that the defendants claim some interest therein based upon the following facts: On September 24, 1901, and prior thereto, one Josephus M. Moore was the owner of an undivided third interest in the lot in question. On said date he died and left a will, by the terms of which he devised to his daughter, Mary Louisa Preston, along with other property, the following: "The one-half of the proceeds of lots when sold of the undivided one-third interest of lots in Pullman unsold at my death." He also devised to his minor son, Amos Abbott Moore, along with other property, the following: "The one-half of the proceeds of lots when sold, of the undivided one-third of Pullman lots unsold at my death, his share of said proceeds to be invested to make a fund for him when he becomes of age." The will also contained the following clause: "I do hereby designate and appoint my brother, Miles C. Moore, the executor of this my last will and testament. I do hereby request and expressly provide and direct that no bond or other security be required of him, and so far as by law in any case can be done he be relieved from the supervision and control of all courts."

On the petition of the widow of the deceased, the will was duly admitted to probate by the superior court of Walla Walla county, and Miles C. Moore was appointed executor without bond. An order was afterwards entered by the court that the estate was solvent and should be settled without the intervention of the superior court of Walla Walla county or any other court. On the 14th day of September, 1905, Miles C. Moore was duly appointed guardian of the estate of Amos Abbott Moore, the minor above named, and he is still such guardian. Thereafter Miles C. Moore as executor undertook to sell and convey to the plaintiff the interest of the deceased in the lot, and he executed and delivered a deed purporting

to convey the same, and received from plaintiff the purchase price therefor.

The widow of the deceased, Eva H. Moore, and the two children aforesaid were made defendants in this suit, together with Miles C. Moore as guardian of the minor son. It is alleged that the widow and children assert that Miles C. Moore as executor was not authorized or empowered to sell or convey the interest of the deceased, but that he asserts that he was so authorized. Such being the view of the executor, who was also the general guardian of the minor, Lester S. Wilson was appointed guardian *ad litem* in this suit. In behalf of the minor, he demurred to the complaint, which set up the foregoing facts, and the other defendants made default. The demurrer was overruled, and the guardian *ad litem* having refused to plead further, judgment was entered for the plaintiff quieting his title to the land as against all of the defendants. The minor, through the guardian *ad litem*, has appealed.

The question presented by the appeal is, do the foregoing facts, which the demurrer admits, entitle the respondent to a decree quieting his title. It is appellant's contention that, under the terms of § 1, page 197, Laws of 1895, Bal Code § 4640 (P. C. § 2718), the title to the land vested immediately in appellant upon the death of the testator, subject only to the debts of the deceased, family allowance, expenses of administration, and any other charges for which the land is liable under existing laws. It is therefore urged that, with the title thus resting in the appellant, it was not within the power of the executor to transfer it. It is clear from the provision of the will above quoted that the testator intended it to be a nonintervention will, and that whatever powers were necessary to carry its terms into effect should be exercised by the executor without the direction of any court. If the testator intended that the executor convey the land, then the latter had the power to convey it as it was done. We must search the will for the intention of the testator. If it is

clear that the intention was that the title vest in appellant under the statute, then his contention must prevail. We think from the words used by the testator it is manifest that such was not the intention. It will be remembered from the statement of facts in the beginning of this opinion that the will provides that one-half of the proceeds of the interest in the Pullman lots remaining unsold at the testator's death shall "when sold" belong to the daughter. The same provision is made for the other half to go to the son, the appellant, with the added provision in his case that his share of the proceeds shall be invested to make a fund for him when he becomes of age. That it was the intention that the executor should convey the interest of the deceased in the Pullman lots and divide the proceeds between the two children, is entirely clear. Such being true, the title to the land did not vest in the son and daughter upon the death of the father. The brother of the deceased, who was named as executor without the intervention of any court, became a trustee for all purposes necessary to execute the terms of the will. *Newport v. Newport*, 5 Wash. 114, 31 Pac. 428; *Seattle v. McDonald*, 26 Wash. 98, 66 Pac. 145; *In re Macdonald's Estate*, 29 Wash. 422, 69 Pac. 1111. The terms of the trust could not be carried out without the power to sell the land and to transfer the title thereto. The title therefore vested in the trustee for that purpose. It is the established doctrine that "trustees take exactly that quantity of interest which the purposes of the trust require." 2 Jarman, Wills (6th ed.), p. 306. No particular form of words is necessary in order to create a trust of this character, but the purpose to create it may be gathered from the language of the instrument by giving to the words employed the customary significance accorded to them when used in similar connections. If by the application of such test it is found that a trust has been created, then the immediate disposition of the title is well stated as follows:

"If the *purposes of the trust require that the trustee shall take the fee simple* of the legal interest in order that those

purposes may be carried out, he will take an estate of inheritance, though no words of inheritance have been used by the testator in devising the legal interest. Hence, if the interest given to the beneficiary, though it was devised to him in indeterminate language, is greater than the legal interest devised to the trustee, the trust estate will be enlarged in the trustee to answer all the purposes of the trust. If the carrying out of the purposes of the trust require that the trustee shall take a fee, equity will create a fee simple in him by implication without the use of the word 'heirs.' "  2 Underhill, Law of Wills, § 781.

It is a settled rule in the construction of wills or other instruments that, when land is directed to be sold and turned into money, courts in dealing with the subject will consider it as personalty and will treat the land as equitably converted in the hands of the executor or trustee.

"As in the construction of wills the intention of the testator is the main guide. In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. There must be an expression in some form of an absolute intention that the land shall be sold and turned into money. This intention may be expressed, as by the use of mandatory words directing the sale, or giving the power of sale in imperative terms. On the other hand the intention to convert may be implied, as where a testator authorizes his executors to sell his real estate, and it is apparent from the general provisions of the will that he intended such estate to be sold, although the power of sale is not in terms imperative. The necessity of a conversion of realty into personalty to accomplish the purposes expressed in a will is equivalent to an imperative direction to convert and effects an equitable conversion." 9 Cyc. pp. 831-2-3. See, also, Page, Wills, § 703; Schouler, Executors (3d ed.), § 217; Pomeroy, Equity Jurisprudence (3d ed.), §§ 1159-60; *Clarke v. Clarke,* 46 S. C. 230, 57 Am. St. 675; *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, 76 Am. St. 924, 50 L. R. A. 307; *Fahnestock v. Fahnestock,* 152 Pa. St. 56, 25 Atl. 313, 34 Am. St. 623; *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188, 5 Am. St. 117, and note 141-8.

It is therefore manifest in the case at bar that a trust was created by the will of the deceased, Josephus M. Moore, and that the purposes of the trust required an equitable conversion of the real estate in question in the hands of Miles C. Moore, the trustee. The real estate did not descend to appellant as contended, but the title rested in the trustee until the purpose of the trust could be effectuated by the actual exchange of the land for money. That was done when the trustee transferred the title to the respondent and received the purchase price.

The judgment is affirmed.

FULLERTON, CROW, MOUNT, and ROOT, JJ., concur.