[No. 8087.  Department One.  October 11, 1909.]

EMELINE M. SHUFELDT *et al.*, *Appellants*, v. EDWIN HUGHES, *Executor etc.*, *Respondent.*[1]

WILLS—NONINTERVENTION WILL—EXECUTORS AND ADMINISTRATORS
—NECESSITY OF ADMINISTRATION. Where a will devised property to
two individuals, one of whom was not a trustee, and provided that
if either refused to accept the trust, another be appointed in his
stead by the court probating the will and settling the estate, the will
is not a "nonintervention" will; since it is necessary under Bal.
Code, § 6119, that the intention to dispense with administration be
shown by express words or necessary implication.

WILLS—NONRESIDENTS—NECESSITY OF PROBATE. Where a nonresi-
dent testator dies leaving real estate in this state, it is necessary
that his will be probated here.

EXECUTORS AND ADMINISTRATORS — COMPENSATION — WILLS. Bal.
Code, § 6314, providing for commissions on the whole estate ac-
counted for by an executor, where no compensation is provided for
in the will or he shall renounce his claim thereto, applies to non-
intervention wills, as well as to others.

SAME—WAIVER OF COMPENSATION—BURDEN OF PROOF. An executor
having a legal right to probate a will without the consent of a widow,
the burden of proof is upon her to show an alleged waiver of his
statutory commissions under an agreement to accept a flat salary.

SAME—LIABILITIES OF ESTATE—ATTORNEY'S FEES—AMOUNT. In
determining the amount of an attorney's fee to be allowed an ex-
ecutor, the court will take into consideration the value of the estate
and the responsibility involved.

SAME. An allowance of $13,000 for the fees of an attorney for an
executor is excessive, and $8,750 is sufficient, where it appears that
the estate consisted of a city building, its rents, issues and profits,
of the value of $600,000, that the attorney was learned in the law,
and of thirty years' experience, that he probated the will, made an
exhaustive inquiry as to the community nature of the estate, devoted
considerable time to the question of the inheritance tax, attended
to two suits, carried the estate to final settlement, was paid $1,750
up to the time of the final account, and $7,000 thereafter upon con-
test of the final account, which had once been vacated upon condi-
tion that the executor be allowed to credit on his account all subse-
quent disbursements, such order being conclusive upon the estate
as to the items paid.

[1]Reported in 104 Pac. 253.

Appeal from a judgment of the superior court for King county, Morris, J., entered January 16, 1909, approving the final account of an executor, after a hearing before the court. Reversed.

*Revelle, Revelle & Revelle*, for appellants.

*Chas. F. Munday*, for respondent.

Gose, J.—This appeal is prosecuted from a decree approving the final account of the respondent and allowing executor's and attorney's fees. The testator, a resident of the state of Wisconsin, died on November 13, 1906. The will was admitted to probate in the county court of Waukesha county, Wisconsin, on the 18th day of December following. A copy of the will and of the original record of probate, authenticated as required by law, was filed in the superior court of King county, and admitted to probate on January 31, 1907. The order admitting the will to probate, in pursuance of the provisions of the will, the other executor therein named being a nonresident, appointed the respondent as sole executor, and directed that letters testamentary issue to him upon his taking and subscribing an oath as provided by law. The oath was taken by the respondent on the day of the date of the order. Thereupon notice was given to the creditors, an inventory was filed, the estate was appraised, and the execution of the will proceeded in the usual and ordinary way.

On March 25, 1908, the final account was filed, with a petition and prayer that it be settled and allowed. On the day following, an order was entered fixing the 16th day of April as the time for the hearing and settlement of the account, and directing the proper notice to be given. On May 28, Emeline M. Shufeldt, the widow of the testator, filed her objections to the account. On July 9 following, William B. E. Shufeldt filed a statement uniting in such objections. The substance of the objections was, (1) that under

the will it was the duty of the executor to report to the county court of Wisconsin, where the will was first probated; (2) that it is a nonintervention will, the respondent acting as trustee, and that he is not entitled to the statutory commission as executor; (3) that the respondent agreed to accept a flat salary in lieu of the statutory compensation. The prayer was that the account be disallowed, and that no compensation in excess of $500 be allowed, either to the executor or to his attorney. On June 1, 1908, the executor answered, joining issue upon the objections. On August 28 following, the executor filed his supplemental account, and a hearing was had upon the account and the supplemental account, and on August 29 following, a decree was entered settling and allowing the same. The decree recited:

"Emeline Shufeldt having filed herein her objections to said account, and on July 7th, 1908, W. B. E. Shufeldt having filed herein objections to said account, and on August 28th, 1908, said executor having filed his answer thereto duly verified, and said executor having filed herein an account supplementary to his said final account showing all his receipts and disbursements from the date of the said final account down to and including this date; and said matter having come regularly on to be heard on August, 28th, 1908, at 1:30 o'clock p. m. said executor appearing in person and by Chas. F. Munday, his attorney, and no one appearing in behalf of said objectors, or either of them, and no testimony or other proof being offered on behalf of said objectors, or either of them, in support of their said objections, and said objections being abandoned. It is now ordered that said objections and each and every of them be and the same hereby are overruled:"

and fixed the executor's commission at $25,251.75, less whatever sum he had theretofore received on account thereof; and fixed the attorney's fees at $12,500, less the sum of $1,750 theretofore paid, and directed the executor to pay the same. On September 17 following, the objectors filed a motion to vacate the decree, which was heard and granted on

the 28th day of September. The order granting the motion to vacate recited:

"It is now by the court, after due consideration, ordered that said decree so made and entered on August 29, 1908, be and the same is hereby vacated and set aside, upon one condition, however, that the executor Edwin Hughes be allowed credit in his account for any and all disbursements which he has made subsequent to August 29, 1908."

After a hearing on the account and on January 16, 1909, a decree was entered overruling the objections, and fixing $13,000 as reasonable compensation for the services of the attorney for the executor, and fixing the commission of the executor at $25,553.25, the statutory commission, less whatever sum he had theretofore received on account thereof, and directing the executor to pay such sums.

The will, so far as is necessary for a proper understanding of the case, is as follows:

"(2) All the residue of my estate, real and personal, I devise and bequeath to my wife, Emeline M. Shufeldt, to have and to hold for her own use during her life; and I do authorize her, as her own best judgment may dictate, to sell, exchange or dispose of all live-stock, all perishable property and all articles subject to become useless or worthless by the ordinary use and wear thereof, without accounting, by her or her estate to any residuary legatee herein designated for any portion thereof; also I do authorize her to collect, exchange or sell any stocks, bonds, notes, mortgages, or other assets, and to reinvest the proceeds thereof in income-bearing property for the benefit of my estate.

"(3) Upon the decease of my said wife, if she survive me, or upon my decease if she do not survive me, I give and bequeath all my estate, not hereinbefore specifically devised, as follows:

"(A) To my daughter, Mary Shufeldt Hartshorne, or to her issue if she be then deceased leaving issue, the sum of fifty thousand dollars, to be paid from my personal estate.

"(B) To my daughter, Emeline Shufeldt Hughes, a half interest, during her life, in the income and proceeds of the lots and building known as the Butler Block, in the city of Seattle, state of Washington.

"(C) I do hereby will and bequeath the said Butler Block and the lots upon which it stands to my son, William B. E. Shufeldt and my son-in-law Edwin Hughes, to have and to hold the same to them and their assigns forever, in trust, for the uses and purposes as follows:

"During the life of my wife, Emeline M. Shufeldt, the said trustee shall pay to her the net income from said block, as per article number 2 of this will.

"If either of said trustees refuse to accept said trust, or be rendered incapable by death or other causes to fulfill the same, then I direct a trustee be appointed in his stead by the court probating this will and settling my estate, and such trustee shall have all the title and power herein conferred upon either trustee herein named.

"I nominate my son, William B. E. Shufeldt, and my brother-in-law, Samuel E. Egan, to be executors of this will."

By a codicil the nomination of Samuel E. Egan was revoked, and in his place Edwin Hughes was nominated as executor.

The appellants urge three propositions, viz: (1) That the court had no jurisdiction to enter a decree; (2) that the executor is not entitled to a commission, and (3) that the attorney's fees allowed by the court are excessive. We will consider these points *seriatim*.

In support of the first proposition, it is argued that it was the intention of the testator upon his death to vest in the trustees named in section C of the will the legal title and possession of the property known as the Butler Block, and that the management of the property is cognizable only in a court of equity, citing *Smith v. Smith*, 15 Wash. 239, 46 Pac. 249; *Moore v. Kirkman*, 19 Wash. 605, 54 Pac. 24; *State ex rel. Phinney v. Superior Court*, 21 Wash. 186, 57 Pac. 337; *Seattle v. McDonald*, 26 Wash. 98, 66 Pac. 145, and *Martin v. Moore*, 49 Wash. 288, 94 Pac. 1087. In the *Kirkman, Phinney* and *McDonald* cases the will expressly provided that the executors should execute the will without the intervention of the probate court. In the *Smith* case the entire estate was devised to the executors in trust for

certain specified uses. In the *Martin* case the will, devising
to a daughter, "The one-half of the proceeds of lots when
sold of the undivided one-third interest of lots in Pullman
unsold at my death," and to a son, "The one-half of proceeds
of lots when sold, of the undivided one-third of Pullman lots
unsold at my death, his share of said proceeds to be invested
to make a fund for him when he becomes of age"; and pro-
viding: "I do hereby designate and appoint my brother Miles
C. Moore the executor of this my last will and testament. I
do hereby request and expressly provide and direct that no
bond or other security be required of him, and so far as by
law in any case can be done he be relieved from the super-
vision and control of all courts," was construed to be a non-
intervention will, with the power of sale in the executor.

In the instant case, in the original will one of the executors
was not named as a trustee, and there is nothing in the will
indicating an intention in the testator to make the will a non-
intervention one, but there is express language showing his
intention to have the will regularly probated. Such intention
is found in the words heretofore quoted, viz: "If either of
said trustees refuse to accept said trust . . . then I
direct a trustee be appointed in his stead by *the court pro-
bating this will and settling my estate.*" (The italics are
ours.) There are two methods of probate in this state. One
method is where the executor executes the will subject to the
control of the court, until the estate has been settled, and the
property distributed. The other method is that provided by
our code, Bal. Code, § 6196 (P. C. § 2489), the applicable
part of which is as follows:

"In all cases where it is provided in the last will and testa-
ment of the deceased that the estate shall be settled in a man-
ner provided in such last will and testament, and that letters
testamentary or of administration shall not be required, and
where it also duly appears to the court, by the inventory filed,
and other proof, that the estate is fully solvent, which fact
may be established by an order of the court on the coming
in of the inventory, it shall not be necessary to take out

letters testamentary or of administration, except to admit to probate such will, and to file a true inventory of all the property of such estate in the manner required by existing laws. And after the probate of such will and the filing of such inventory all such estates may be managed and settled without the intervention of the court, if the said last will and testament shall so provide."

There was no devise to the executors. Certain property was devised to two individuals as trustees, one of whom, in the original will, was not an executor. It is clear, therefore, that it was not the intention of the testator, at the time he executed the will or codicil, to dispense with administration. An intention to do so must be evidenced by express words or by necessary implication. The respondent was the only resident executor. Under the terms of the will he could elect to act as executor and decline to serve as trustee.

"If from the will it appears that the testator intended to give his trustees a distinct and independent character, probate of the will by the executors will not make them trustees. . . . If the trust is given to one named, and the same person is afterwards appointed executor, the trust is not annexed to the office of executor." 1 Perry, Trusts (4th ed.), §§ 262-3.

"An executor, who is also a trustee under the will, cannot be considered as holding any part of the assets in the latter capacity, until he has settled an account at the probate office as executor, in which he is credited as executor with the amount which he holds as trustee." *Hall v. Cushing*, 9 Pick. 395.

"But a person may be appointed both executor and trustee under a will in such a manner as to enable him to accept one of the appointments and to decline the other. If it appears from the will that the testator intended to give the trustees a distinct and independent character, the taking out of probate by the executors will not serve to make them trustees unless they expressly accept the trust and qualify as trustees. . . . Where a trust is given to a person by name, and he is subsequently appointed executor, the trust will be held as distinct from the executorship." 2 Beach, Trusts and Trustees, p. 885, § 378.

See, also, *In re Higgins Estate*, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116. Moreover, upon any construction, it was necessary to have the will admitted to probate in this state. Bal. Code, § 6196 (P. C. § 2489) ; *State ex rel. Mann v. Superior Court*, 52 Wash. 149, 100 Pac. 198.

An executor is a person appointed to carry the will into effect or execution after the death of the testator, and to dispose of his estate according to its tenor. *In re Lamb's Estate*, 122 Mich. 239, 80 N. W. 1081. Our statute relating to the compensation of executors was not before the court or construed in either of the cases cited by the appellants. Whether the instrument be construed as an ordinary will or a nonintervention one, will not affect the right of the executor to the statutory commission. Our code, Bal. Code § 6314 (P. C. § 2636), provides that, when no compensation shall have been provided by will, or the executor shall renounce his claim thereto, he shall be allowed commission on the whole estate accounted for by him in the amount therein fixed. In the instant case no compensation was provided by will for the executor. We cannot by construction exempt nonintervention wills from the plain terms of the statute. Upon either construction the law fixes the compensation where it is not fixed by the will.

It is next contended that the executor, by an agreement with the testator's widow, waived his right to the statutory commission and agreed to accept a flat salary in lieu thereof. He had a legal right to probate the will without her advice or consent. It is true he could waive the statutory compensation and accept a salary or a fixed, definite sum in lieu thereof. The burden, however, of showing this rested on the objectors. The widow did not testify. Without reviewing the evidence, it is sufficient to say that we agree with the learned trial court that the waiver was not established by a preponderance of the evidence, and that the executor is entitled to the commission provided by statute and allowed by the court.

It is finally urged that the compensation allowed the executor for the services of his attorney is excessive. The record shows from the nature of the duties performed by the attorney, that it was necessary for the executor to employ him, and he is entitled to an allowance for the reasonable value of the services rendered by the attorney. *Noble v. Whitten*, 38 Wash. 262, 80 Pac. 451. It is admitted that the estate consisted of the Butler Block, of the value of $600,000, and its rents, issues, and profits. The appellants argue that the value of the estate cannot be considered in fixing the compensation to be paid to the executor for the attorney's services. We cannot yield our assent to this view, but agree with the respondent that, in determining the amount of the fee, "it is proper to consider the time and labor required, the novelty and difficulty of the questions involved, and the skill required to properly conduct the case, and the amount involved in the controversy." It cannot be denied that the responsibility of an attorney is greater in a large estate than in a small one. It seems reasonable, therefore, that his compensation should be commensurate with his responsibility. This principle was recognized in *Sullivan v. Sullivan*, 52 Wash. 160, 100 Pac. 321, where we said:

"In view of the nature of the action and the amount of property involved, it cannot be said that the allowance for attorney fees is unreasonable or excessive."

The record shows, that the respondent's attorney is learned in the law; that he has had thirty years' experience at the bar; that he prepared the papers for probating the will; that he made a careful and exhaustive investigation as to whether the property was community or separate, before filing the inventory; that the determination of this question involved an examination of the statutes and decisions of three states; that he devoted considerable time to the question of the amount of inheritance tax collectible from the estate and the different interests; that he went over this matter two or three times with one of the tax commissioners, and made a trip to

Olympia; that he briefed and commenced two independent suits, one in the Federal court, the other in the state court, to have determined the right to the use of the word "Butler" on the Butler Annex, neither of which was appealed; that he prepared an answer to the objectors against final settlement, and prepared numerous affidavits against the application to vacate the first decree; that he went to Milwaukee on a stipulation to take the testimony of the objectors' witnesses, but not solely for that purpose; that he was consulted almost daily by the executor upon questions arising in the execution of the will; that he carried the estate to final settlement, and performed all the usual duties of an attorney in an estate. Witnesses, members of the bar, gave evidence, both for the objectors and for the respondent, as to the value of the services rendered. The objectors' witnesses fixed the value of the services at five to six thousand dollars, whilst the respondent's witnesses estimated the value of the services at $15,000. As we have seen, $13,000 was allowed.

The vacation of the first decree of settlement was largely in the discretion of the court. The time of settlement of the account had been fixed by proper notice, and thereafter continued from time to time until August 28, 1908, when a hearing was had and a decree entered, the objectors failing to appear. In vacating the decree and granting leave to the objectors to defend, the court could annex any reasonable condition. We have seen that the condition fixed by the court was that the "executor be allowed credit on his account for any and all disbursements which he has made subsequent to August 29, 1908." Prior to the entry of the first decree, the executor had paid his attorney $1,750, and subsequent thereto and prior to its vacation he had paid him an additional sum of $7,000, making in the aggregate $8,750. We regard these payments as binding upon the estate and conclusive against it and the objectors. From a careful examination of the entire record, we think that $8,750 is reasonable and adequate compensation for the services of the attorney.

It follows that the court erred in allowing the executor $13,000 for attorney's fees.  The view we have expressed makes it unnecessary to consider other cases cited and relied upon by the appellants, or to discuss the many interesting questions raised by them as to the construction of the will in other respects.

The decree will be reversed, and the case remanded with directions to the lower court to enter a decree in conformity with this opinion.

RUDKIN, C. J., CHADWICK, and FULLERTON, JJ., concur.

MORRIS, J., took no part.