[No. 839-3. Division Three. December 11, 1973.]

DOROTHY I. ORSBORN, *Individually and as Executrix, Appellant,* v. OLD NATIONAL BANK OF WASHINGTON, *Respondent.*

*Roger K. Garrison,* for appellant.

*Michael M. Corless* (of *Salvini & Corless*), for respondent.

BARNETT, J.*—Plaintiff in the trial court and appellant herein brought this action individually and as executrix of the estate of her late husband. She sought a judicial cancellation of a promissory note dated November 15, 1968, in favor of respondent in the amount of $8,513.99 and to further cancel a vendor's assignment of a real estate contract taken as security for said note. Appellant's complaint further challenged the adequacy of the sale of certain equipment given as additional security for said note, the proceeds of which were credited in part to a reduction of the note. The trial court allowed plaintiff credits of $1,425.55 on said promissory note representing proceeds which were received from the equipment sale and not previously acknowledged.

No error has been assigned to any of the findings of fact. Hence, they are accepted as verities on appeal. *Riley v. Rhay,* 76 Wn.2d 32, 454, P.2d 820 (1969).

The court specifically found as follows:

V

That prior to the death of Albert G. Orsborn [on Janu-

---

*Judge Dolph Barnett is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

ary 18, 1968], the corporation of A. G. Orsborn & Sons, Inc. had incurred substantial indebtedness with the defendant as a result of the borrowing of funds from defendant; that said corporation indebtedness had been personally guaranteed by the decedent, Albert G. Orsborn, in his lifetime. That Albert G. Orsborn had also borrowed individually from the said defendant.

. . .

## VII

That on or about November 15, 1968, *the plaintiff, as president* of A. G. Orsborn & Sons, Inc., *and as executrix of the Estate* and of the Will of A. G. Orsborn, *signed and executed a promissory note* to the defendant in the amount of $8,513.99, and at the same time and place, as security for said note, executed an assignment of a vendor's interest in real estate contract wherein the plaintiff and her late husband were selling certain real estate to Joe G. Kobes and Marie Kobes, husband and wife. Also, at the same time, she signed a security agreement on certain fam [*sic*] equipment to the defendant.

. . .

## XIII

That the promissory note was given to extend and renew the obligation; that no new different or additional consideration was received by plaintiff or the Estate of Albert G. Orsborn as a consequence of the execution of the promissory note of November 15, 1968; that the consideration for said note was moral consideration *only*.

(Italics ours.)

The court found that the promissory note and documents executed November 15, 1968, by the plaintiff were of her own free will, without any threats, coercion, undue influence or fraud practiced upon her and that there was no reason the plaintiff should have been dealt with as a person of limited abilities except as to any legal capacity as executrix.

Other findings of the court are that no claim against the estate was filed by the defendant and that the plaintiff gave notice to creditors in the estate of Albert G. Orsborn as required by law and that the nonclaim statute, RCW 11.40.010, expired June 8, 1968. The note was executed

November 15, 1968, while the time for filing claims had expired June 8, 1968.

Assignment of error No. 2 claims that the court, after finding no monetary or legal consideration, erroneously concluded as a matter of law that moral consideration only was sufficient.

It is generally held that a mere moral obligation or conscientious duty arising wholly from ethical motives or a mere inducement of conscience unconnected with any legal obligation, perfect or imperfect, or with the receipt of benefit by the promisor of a material or pecuniary nature will not furnish a consideration for an executory promise. Detriment to the promisee alone is held to be insufficient even though the promisor is morally obligated to the person benefited. The rule that a moral obligation unconnected with a legal obligation, liability or benefit is insufficient consideration for a subsequent promise is illustrated by various cases such as those involving agreements made in consideration of past cohabitation or to pay for the support of an illegitimate child. It seems clear both upon principle and authority that mere moral obligation will not support an executory promise to pay another's debt or to alleviate any supposed hardship or injustice in the distribution of decedent's estate. *See* 17 Am. Jur. 2d *Contracts* § 131 *et seq.* (1964).

In 1 S. Williston, *Contracts* § 148 (3d ed. 1957), we find the following:

Most of the States of the United States, and England, have rejected the principle of moral consideration, even though some exceptional cases of liability on promises made without present consideration may still exist as in the case of promises to pay debts barred by the Statute of Limitations, or by a discharge in bankruptcy. Such cases are now rested on other grounds and moral consideration as such is held insufficient to support a promise.

In 1 S. Williston, *Contracts* § 147 (3d ed. 1957), we also find the following statement at page 635:

At the present day there can be no doubt that the

doctrine of moral consideration is almost uniformly held to have been discarded, and "moral consideration" to have no obligatory effect.

However, the general rule is well settled that a moral obligation arising from or connected with what was once a legal liability, which has since become suspended or barred by operation of a positive rule of law or statute, will furnish consideration for a subsequent executory promise. Accordingly, where there was at one time a legal duty, which by operation of law has become unenforceable, a subsequent promise to perform the duty is binding. The familiar and uncontradicted rule that upholds a new promise after the bar of the statute of limitations has often been expressly put upon the ground that although the debt is not legally enforceable, there is still a moral obligation which comes within the exception of the rule and is sufficient to sustain the new promise. A like rule has been applied with a new promise to pay a debt discharged in bankruptcy or insolvency proceedings. *See* 17 Am. Jur. 2d *Contracts* § 134 *et seq.* (1964).

In the instant case, at the time the notes and security agreements were executed on November 15, 1968, the bank had no legal claim against the estate as the claim had been outlawed. Neither did the estate at the time the documents in question were executed receive any benefit from such transactions.

In *Opitz v. Hayden*, 17 Wn.2d 347, 135 P.2d 819 (1943), at page 368, we find the following:

If, at the time of the execution of the contract, respondent had no existing legal claim against Anderson, then the assurances made by him in the written agreement would amount simply to an executory promise on his part, and the question would arise as to whether such promise could in any event be enforced. It has become well established by an almost unanimous current of modern authority that a mere moral obligation or conscientious duty arising solely from ethical motives or the promptings of conscience, unconnected with any legal obligation or with the receipt of material benefits to the

promisor, will not furnish a consideration for an executory promise, and this rule has been very emphatically applied to promises made wholly on account of past cohabitation where no element of consideration other than moral is present. But it is equally well established that moral obligations arising from, or connected with, what was once a legal liability which has since become suspended or barred by the operation of a positive rule of law will furnish a consideration for a subsequent executory promise.

■■■■ It is argued by respondent that prior to the running of the nonclaim period on June 28, 1968, the promissory note signed by A. G. Orsborn could have been enforceable against his estate. Therefore, when appellant signed the November 1968 note, she did so as executrix of his estate; and consequently, a prior valid obligation of the estate, unenforceable because of the running of the nonclaim statute, was revived as against appellant representing the estate. This is a non sequitur. It is based upon the premise that the executrix is the alter ego or second self of the deceased and that the executrix represents the deceased in her official capacity. The executrix of an estate does not represent the deceased. In *Shufeldt v. Hughes,* 55 Wash. 246, 104 P. 253 (1909), the court said, on page 253:

> An executor is a person appointed to carry the will into effect or execution after the death of the testator, and to dispose of his estate according to its tenor. *In re Lamb's Estate,* 122 Mich. 239, 80 N. W. 1081.

Hence, the act of the executrix in this case could not revive the note. Furthermore, the statute, RCW 11.40.010, requiring the filing of claims within a specified time is a statute of nonclaim, is mandatory and cannot be waived by the legal representative of the estate. *New York Merchandise Co. v. Stout,* 43 Wn.2d 825, 264 P.2d 863 (1953).

We now state as did the court in *New York Merchandise Co. v. Stout, supra,* that the respondent is the victim of its own fault and inaction by its failure to comply with the mandatory statute of nonclaim for which the courts can give no relief.

Counsel for the appellant has made other assignments of error, but in view of the fact that we hold that the decision of the trial court should be reversed because there was no consideration in the transactions noted and also a failure to comply with the nonclaim statute, we refrain from discussing the other assignments of error.

Reversed.

GREEN, C.J., and MUNSON, J., concur.