[No. 14086.  Department One.  August 3, 1917.]

*In the Matter of the Estate of* JAMES M. HAGERTY.
HELENA GERTRUDE HAGERTY *et al., Appellants,* v.
LEROY L. WORK *et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—COMPENSATION—VALUE OF ESTATE—COMPUTATION.  The appraised value of the estate is *prima facie* the basis for computing the compensation of executors, in case it is unquestioned, but the actual cash value at the time of final settlement prevails in case of dispute.

SAME—COMPLAINT—VALUE OF ESTATE — EVIDENCE — SUFFICIENCY. Where the value of an estate appraised at $150,000, was largely speculative, and in the final account the executors alleged that the total value as a basis for computing the inheritance tax was $75,755.79, which sum an executor testified was the amount of property and cash actually received and handled belonging to the estate, the latter sum furnishes the basis upon which the compensation of the executors is to be determined.

SAME—COMPENSATION—EXTRAORDINARY SERVICE — STATUTES.   Under Rem. Code, § 1549, fixing the compensation of executors at 7 per cent on the first $1,000, 5 per cent upon the next $1,000, and 4 per cent on all above that sum, and for any extraordinary services not ordinarily required of executors, a reasonable sum not exceeding the amount of commission allowed, the total amount cannot exceed double the commissions in an ordinary case.

SAME—COMPENSATION—WHEN PAYABLE—INTEREST.  Executors are not entitled to pay themselves any compensation or commission prior to the time of the final settlement, and if they do so, they are chargeable with interest thereon from the date it is received.

SAME—COMPENSATION—AS TRUSTEES—ESTOPPEL.   Where executors had at all times proceeded as such, and made their final account and requested the court to allow them compensation as such, they are entitled only to the commissions and compensation for extraordinary services allowed by statute to executors, and it is immaterial whether they acted in a dual capacity of executors and trustees.

Appeal from a judgment of the superior court for Okanogan county, Geo. S. Lee, judge *pro tempore*, entered December 13, 1916, in favor of the defendants, fixing the com-

[1]Reported in 166 Pac. 1139.

pensation of executors of an estate, after a hearing upon objections to the final account thereof.  Reversed.

*George F. Hannan* and *Kronshage, McGovern & Hannan*, for appellants.

*Tolman, King & Way* and *Smith & Gresham*, for respondents.

MAIN, J.—This is an appeal from a judgment of the superior court fixing the compensation of the executors of the last will and testament of James M. Hagerty, deceased.  The appellants are Helena Gertrude Hagerty, Jean Mason Hagerty, and Florence Hagerty, children of the testator, and the residuary beneficiaries named in the will.  The respondents are Leroy L. Work, Monroe Harmon, and S. P. Ecki, who were named in the will as executors.  The testator having died prior to September 30, 1905, the will was filed for probate on that date.  The will, after making certain specific bequests, devised and bequeathed the residue of the estate to the appellants.  The will contained a provision that there should be no division of the property for ten years, or until Florence Hagerty, the youngest child, should reach the age of twenty-one years.  It also provided that the corporate stock bequeathed to the sisters of the testator should be held in trust for the same period of time by the executors. There was a further provision that it was the desire of the testator that the executors named in the will should pursue, as nearly as possible, the same policy toward the promotion and development of the properties in which the testator was interested which he had pursued during his lifetime, and that such executors might use any money in their hands, from whatever source, to protect the interest of the properties and of the other stockholders, the same as "I have always done."  On October 18, 1905, executors Work and Harmon each filed an oath as executor.  On November 13, 1905, executor Ecki, who was a resident of Ohio, filed his oath as

executor. On October 18, 1905, an order was entered by the superior court appointing Work, Harmon, and Ecki executors of the will. This order recited that the will was duly exhibited, proven and recorded. On February 9, 1906, the inventory and appraisement of the estate was filed, which showed the total value thereof to be $150,701.08. The estate consisted largely of shares of stock in what is referred to as the "Similkameen Falls Power & Development Company," and in various mining enterprises and in a mercantile company.

At the time of the death of the testator, the property sought to be developed by the power company had not been acquired from the Federal government. The executors attempted to acquire title thereto without success, but did obtain a permit from the Federal government to develop the property. On October 8, 1907, the executors filed an account showing receipts and disbursements of the estate from October 9, 1905, to December 10, 1906. On January 15, 1913, the executors filed their second report, which covered the period up to and including December 31, 1912. On October 26, 1916, the executors filed their final account, and recited therein that more than ten years had elapsed since the estate passed into their hands, and that Florence Hagerty, the youngest child, had become twenty-one years of age on the 27th day of September, 1916. To this final account, certain objections were filed by the appellants. Thereafter the cause was heard upon the objections, and a judgment was entered fixing the compensation of the executors at $10,473, in addition to the interest on the sums that the executors had theretofore paid themselves, and in addition to the sums received by executors Work and Harmon from the Similkameen Falls Power & Development Company while acting as directors of that company. It is from this provision of the judgment that the appeal is prosecuted. Other facts will be recited in connection with the consideration of the particular points to which they may be relevant.

The first question to be determined is the value of the estate, from which the compensation of the executors is to be determined. The appraisement shows that the approximate value of the estate was $150,000. The inventory shows, as well as the evidence, that the value of the property, from its very nature, was largely speculative. In the final account, the executors alleged that the total value of the estate, as a basis for the computation of the inheritance tax due the state of Washington, was $75,755.79. While executor Work was testifying upon the hearing, he was asked this question:

"Q. The amount of property and cash actually received and handled by you, which actually belongs to the estate, was approximately $75,755.79, was it not?"

To this question he replied, "Yes, sir."

We think it is clearly established by this record that the value of the estate at the time of the settlement of the final account was not that shown by the appraisement, but was that recited in the final report and the value testified to by executor Work. It is true that the report recites this is the value as a basis upon which to figure the inheritance tax due the state of Washington, but we see no reason why the estate should have one value for the purpose of determining the inheritance tax and another value for the purpose of fixing the compensation of the executors. While the appraisement may show the *prima facie* value when that is disputed upon the final account, the question becomes one of fact to be determined by evidence. Where the appraised value is greater than the value at the time of the settlement of the final account, the value at the time of settlement prevails as a basis upon which to fix the compensation of the executors. In *Horton v. Barto*, 17 Wash. 675, 50 Pac. 587, it was said:

"In this case the appraised value of the real estate was over $34,000; while it is contended that the actual value at the time of the settlement was not to exceed $11,000. The lower court allowed a commission upon the appraised value, holding that the same was arbitrarily fixed by the statutes.

But it seems to us that the appraisement was not intended to fix anything more than a *prima facie* value, which should stand if unquestioned. This is evidenced by the fact that the other sections of the code referred to provide that the administrator shall account for any excess over the appraised value in case of a sale, and shall not be liable for any loss, where the same occurs without his fault; and our attention has been called to no case deciding that the appraised value is conclusive. But there are many cases holding that the appraisement is only *prima facie* evidence of the value of the estate. [Citing authorities].

"We are of the opinion that the amount of the compensation should be fixed upon the value of the estate at the time of the settlement, the appraised valuation being disputed."

See, also, *In re Smith's Estate*, 18 Wash. 129, 51 Pac. 348.

It follows, therefore, that the sum of $75,755.79, the value at the time of the settlement in the present case, must furnish the basis by which the compensation of the executors is to be determined.

The next question is the amount of compensation to which the executors are entitled. Section 1549, Rem. Code, provides:

"When no compensation shall have been provided by will, or the executor shall renounce his claim thereto, he shall be allowed commission on the whole estate accounted for by him as follows: For the first one thousand dollars, at the rate of seven per cent; for all above that sum, and not exceeding two thousand dollars, at the rate of five per cent; for all above that sum, at the rate of four per cent; and the same commission shall be allowed to administrators. In all cases such further allowance may be made as the court shall deem just and reasonable for any extraordinary services not required of an executor or administrator in the common course of his duty: Provided, that the total amount of such allowance shall not exceed the amount of commission allowed in this section."

From this statute it will be seen that the executors were entitled, upon the first $1,000, to a commission of seven per cent; above $1,000 and not exceeding $2,000, five per cent; and for all above that sum, four per cent. The last sentence

of the section of the statute quoted provides for an allowance by the court of a just and reasonable sum for extraordinary services which may be performed by an executor or administrator, with the proviso that the total amount of the allowance for such extraordinary services shall not exceed the total amount provided for when no extraordinary services are performed. The first part of the section fixes the compensation in the absence of the performance of any extraordinary services. The second part provides for compensation for extraordinary services and limits that amount to an amount not in excess of the sum allowed when no extraordinary services are performed. By this statute the amount of compensation is fixed when there are no extraordinary services, but when such services are performed the court may allow an additional sum, which additional sum shall not exceed the amount fixed by the statute when no extraordinary services are performed. From this it follows that the respondents, under the first part of the section, would be entitled to the sum of $3,080.23. Under the second part of the statute, which provides for compensation for extraordinary services, they would be entitled to a like additional sum if such extraordinary services were of that reasonable value. The total amount, therefore, which could be allowed under the statute would be $6,160.46.

For the present it will be assumed that the respondents performed extraordinary services for which they were entitled to the full amount permitted by the statute.

The next question involves the amount which the executors had already paid themselves and with which they were legally chargeable. On April 19, 1907, the respondents paid executor Work $500; on June 27, 1913, $1,500; and on September 27, 1916, $300; or a total of $2,300. On April 19, 1907, the respondents paid executor Harmon $500; on June 27, 1913, $1,000, making a total of $1,500. On April 19, 1907, the respondents paid executor Ecki $500. All these sums were paid without petitioning the court for an allowance, and with-

out any order of the court making an allowance. Whether the court has the power under any circumstances to award compensation to the executor prior to the settlement of the final account, we do not here determine, as that question is not involved in this appeal. The question here is whether the executors had the right to pay themselves on account of compensation or commission prior to the time of the final settlement. It seems to be well settled that an executor or administrator is not entitled to the commissions allowed him by law until the settlement of his final account. 11 R. C. L. 228; *In re Sullivan's Estate*, 36 Wash. 217, 78 Pac. 945; *In re Hite's Estate*, 155 Cal. 448, 101 Pac. 448. In the case last cited, it is said:

"It is settled that an executor or administrator is not entitled to the commissions allowed him by law until the settlement of his final account."

If the executor is not entitled to the commissions allowed him by law until the settlement of his final account, the question then arises whether, if he pays himself such commissions prior to that time, he should be charged with interest upon the sums so paid. Upon this question, also, the law is well settled. The rule is that, where an executor pays himself commissions prior to the final settlement of his account, he is charged with interest upon such commissions from the date that he received them. *Wheelwright v. Rhoades*, 28 Hun (N. Y.) 57; *In re Furniss*, 86 App. Div. 96, 83 N. Y. Supp. 530; *In re Stratton*, 76 Misc. Rep. 584, 137 N. Y. Supp. 311; *Kenan v. Graham*, 135 Ala. 585, 33 South. 699; *Wyckoff v. O'Neil*, 71 N. J. Eq. 729, 71 Atl. 388; *In re Carter's Estate*, 132 Cal. 113, 64 Pac. 123, 484.

In the case last cited, it is said:

"The executor was properly charged with interest upon the sum he appropriated as his commissions. He was not entitled to his commissions until the settlement of his final account. (*In re Rose*, 80 Cal. 180.) This money belonging to the estate was appropriated by him to his own use, and

under these circumstances he was properly charged with interest upon the amount."

It therefore follows that the respondents here should be charged with interest upon the sums which they respectively paid to themselves. This interest, at the legal rate, would amount to approximately $1,375. In addition to this, executor Work received the sum of $230 for attending twenty-three directors' meetings of the power company, which sum he admitted should be charged to him as commissions. From the same source, executor Harmon had received $410, which he likewise admitted should be charged to him as commissions.

Taking now the $4,300 which the respondents had paid to themselves as executors, the $1,375 with which they were chargeable for interest, and the $230 and the $410 which executors Work and Harmon had respectively received as trustees, we have a total of $6,315, which the respondents, at the time of the hearing, had either received as commissions or with which they were chargeable as such. As above pointed out, the total amount which the respondents were entitled to as executors, including extraordinary services, would be $6,160.46. The amount which they received and with which they are chargeable exceeds this sum by $154.54. It therefore appears that the judgment of the trial court, instead of allowing the respondents additional compensation, should have charged them with the excess of that which they had received. The appellants are not asking for any affirmative relief, and it was said upon the oral argument that they did not seek an affirmative judgment against the respondents. For this reason, no such judgment will be directed.

Some discussion is found in the briefs relative to whether the respondents acted solely as executors, or executors with trust powers, or in the dual capacity of executors and trustees, but it does not seem to us that it is necessary to determine this question. They at all times had proceeded as executors and made their final account, from which this appeal is prosecuted as such, and requested the court to allow them

compensation as such. It would seem that the statute providing for compensation for extraordinary services was intended to meet such a case as this. The executors had received the greatest amount which they would be allowed by the statute, and more.

The case of *Pitney v. Everson*, 42 N. J. Eq. 361, 7 Atl. 860, is not in point for the reason that, in that case, the executor had rendered his final account and had been allowed his commissions. Thereafter he acted as trustee and sought additional compensation in that capacity, which was awarded him. The distinction between that case and this lies in the fact that everything done by the respondents up to the time of the rendering of their final account, in the case now before us, was done as executors. At no time had they rendered a final account in such capacity and continued thereafter in the capacity of trustees.

Finally, it is contended that, under the new probate code, ch. 156, Laws of 1917, p. 687, § 158, the executors were entitled to such compensation as the court might deem just and reasonable, based upon the services rendered, and that the executors in this case in fact earned the amount of compensation fixed by the trial court. Whether that act has a retroactive effect sufficient to include the present case we do not determine.

After a careful consideration of the record, without reviewing the testimony here in detail, we are of the opinion that the services rendered by the executors to the estate were not reasonably worth more than what could be allowed under Rem. Code, § 1549, *supra*.

The judgment will be reversed, and the cause remanded, with direction to the superior court to enter a judgment denying the respondents any further compensation than that which they had already received prior to the hearing upon the final account.

Reversed and remanded.

Ellis, C. J., Chadwick, Morris, and Mount, JJ., concur.