[No. 23595. *En Banc.* June 16, 1932.]

*In the Matter of the Estate of* H. V. PERRY, *Deceased.*[1]

[1]Reported in 12 P. (2d) 595.

*C. R. Hadley,* for appellant.
*Austin Mires* and *Jay A. Whitfield,* for respondent.

BEALS, J.—H. V. Perry, a resident of the city of Ellensburg, Washington, died at Long Beach, California, December 22, 1930, leaving a will bearing date August 12, 1927, which was, a few days after his death, by the superior court for Kittitas county, admitted to probate. By his will Dr. Perry bequeathed all of his estate to Caroline Green, named his friend, C. H. Stewart, of Ellensburg, sole executor without bond, and provided that his estate be settled without the intervention of the court, save that a final account should be rendered.

Mr. Stewart qualified as executor of Dr. Perry's will, and letters testamentary thereon were regularly issued. Caroline Green, the sole beneficiary under the will, appeared in the probate proceeding and served upon the attorney for the executor the statutory notice, stating that she desired to be advised of all proceedings taken in the estate. The executor filed his verified inventory, showing that the estate owned bonds and other securities which were appraised at over $85,-000, together with cash which brought the total value of the estate up to something over $90,600. May 28, 1931, an order was entered, evidently on oral motion of the attorney for the executor, fixing the fees of the

executor in the sum of three thousand dollars, and allowing him five thousand dollars for compensation for his attorney.

July 21, 1931, the executor filed his final account and petition for distribution, to which Mrs. Green filed exceptions and objections in which she alleged that the final account was incomplete, and that the same contained errors. In these objections, it was also alleged that the allowances to the executor and his counsel were excessive and exorbitant, and that these allowances should be reduced to an aggregate of four thousand dollars. The executor moved to strike the exceptions and objections, and the matter came on regularly for hearing, both upon this motion and upon the final account as filed.

From the statement of facts, it appears that the stocks and bonds belonging to the decedent had been kept by him in two safe deposit boxes in Ellensburg, and that his cash was on deposit in two banks in that city. Practically the sole services performed by the executor consisted of taking possession of the securities, clipping the coupons therefrom as they matured, and depositing the same in the bank. The legal services rendered by the executor's attorney consisted of the ordinary routine matters connected with an extremely simple probate proceeding, the preparation and filing of the inventory, publishing of notice to creditors, and the adjustment of the inheritance tax. The executor expressly disclaimed the rendition of any unusual services, and it is evident that none such were required or rendered, either by the executor or by his counsel.

From the testimony introduced at the hearing, it clearly appeared that the final account of the executor was incomplete, and the trial court very properly expressed his dissatisfaction therewith. One of the at-

torneys appearing at the hearing on behalf of the executor then proposed that a supplemental account be prepared, which it was agreed should be done; and an amended and supplemental final account was thereafter filed and the hearing resumed. To this amended account, no objections were urged by Mrs. Green, save as to the allowances to the executor and his counsel. The trial court reduced the allowance which he had made to the executor as compensation for the latter's attorney, from five thousand dollars to four thousand dollars, and, after further hearing, signed an order approving the final account and distributing the estate to the devisee under the will. From this order, Caroline Green (who will hereinafter be referred to as the appellant) appeals to this court, in so far as the same allows to the executor for his services and those of his counsel the sum of seven thousand dollars, and the executor appeals from the denial of his motion to strike Mrs. Green's objections, and from the order of the trial court reducing the allowance for attorney's fees from five thousand dollars to four thousand dollars.

We shall first consider the appeal of the executor from the ruling of the trial court refusing to strike the objections and exceptions. The executor contends that, as Dr. Perry's will provides that his estate shall be settled without the intervention of the court pursuant to Rem. Comp. Stat., § 1462, it should be held that, with the probate of the will, the jurisdiction of the superior court ended, and that such jurisdiction could be resumed only on application of the executor.

In *In re Megrath's Estate,* 142 Wash. 324, 253 Pac. 455, 256 Pac. 503, this court held that an attorney who had been employed by an executor to represent him in a proceeding initiated by the probate of a non-

intervention will, could not, after his discharge by the executor, cite the executor before the court and, over the executor's protest, have the court make an allowance to the attorney for services rendered. The case of *In re Brown's Estate*, 129 Wash. 84, 224 Pac. 678, was distinguished, as it appeared that, in the case last referred to, the executors had applied to the court to fix the attorney's fees.

Upon the record now before us, the rule laid down in the case of *In re Megrath's Estate* is not applicable, as it clearly appears that here the executor invoked the jurisdiction of the superior court in the matter of the determination of the allowances to be made to the executor and his counsel, and, in his supplemental final account, asked that he be credited with the amounts which he had paid pursuant to the order fixing the same. In any event, we should not be disposed to extend the rule laid down in *In re Megrath's Estate* by holding that a devisee under a will could not, on an appropriate occasion, object to the fees paid to an executor or his counsel, either on order of the court or pursuant to the judgment of the executor.

The original order of the trial court fixing these fees was evidently entered on oral motion, and it is apparently conceded that oral notice of the hearing was given to Mrs. Green's attorney, who, we understand, was present at the hearing, but did not participate therein. It would seem that the order above referred to was prematurely entered, as the time within which a final account could be filed had not yet elapsed, and the fees due the executor should not, under ordinary circumstances, be determined or paid before that time, unless the filing of a final account must be delayed beyond the statutory period for closing an estate, in which event the court might properly make allowances on account.

We find nothing in the entry of the order above referred to which binds the devisee under the will, and, in any event, the order was modified by the trial court, who later reduced the allowance-made therein to the executor by way of compensation to his counsel.

■ The executor contends that Mrs. Green is not an heir, but is a legatee only, and that, consequently, she has no statutory right to question any act of the executor, neither legatees nor devisees being mentioned in Rem. Comp. Stat., § 1462, above referred to, as having any such right. The only reasonable construction of this section is that the word "heir," as used therein in this connection, includes legatees and devisees. A person does not take under a will as an heir, but only as legatee or devisee, and whether or not a person named in a will as a beneficiary thereunder would take as an heir at law in case the deceased died intestate, is immaterial.

The trial court did not err in refusing to grant the executor's motion to strike the exceptions.

■ The other assignment of error urged by the executor will be considered in connection with the discussion of the question presented on the appeal of Mrs. Caroline Green. As above stated, the administration of Dr. Perry's estate was a very simple matter. The funeral expenses and expenses of the last illness were paid, no claims were presented, and the services rendered by the executor consisted of clipping coupons and seeing that the proceeds thereof were deposited to the credit of the estate.

Neither were the services required of the attorney for the executor arduous nor in any way difficult. The only complication in connection with the probate proceeding arose under the first account filed by the executor, and was occasioned by the incompleteness and general unsatisfactory nature of this account, which

required the filing of an amended and supplemental account, which was practically an original statement of the entire administration.

We quite agree with the executor in his contention that his compensation should be commensurate with his responsibilities and the judgment shown in fulfilling his duties; these elements should always be taken into consideration. In his brief, the executor admits that, in fixing his fees, he deferred to the judgment of the superior court, and counsel for the executor cite, in support of their argument that the allowances made were reasonable, Laws of 1854, p. 295 (Rem. & Bal. Code, § 1549), fixing the allowance of an executor at seven per cent on the first thousand dollars of an estate, five per cent on the second thousand dollars, and four per cent on the balance. Computed upon this basis, the fee of the executor, in the instant case, would have amounted to approximately $3,664, and, if the same amount had been allowed his counsel, the fees would have totaled over $7,300.

The probate code of 1917 (Rem. Comp. Stat., § 1528) changed the law in regard to the allowance of compensation to an executor, and provided that he be allowed such fee as to the court may seem just and reasonable, based on the services rendered, and that the compensation allowed an executor for his counsel should be determined upon the same basis. By this amendment, the legislature clearly evidenced its desire to change the former system of compensating an executor by paying him a percentage of the estate without regard to the nature, extent or value of the services rendered by him (save that the law did provide for extra compensation in proper cases), and the court now, in fixing the fee of an executor or administrator, must take into consideration, with other pertinent matters, the services rendered, and fix such compen-

sation as, in view of all the circumstances, is just and reasonable.

The intention of the legislature is manifest to depart from the former fixed and arbitrary percentage standard and establish a new and more equitable rule for determining the compensation to be paid for services rendered to an estate. Under the new rule, the compensation is commensurate with the value of the services rendered, and, while the value of the property of the estate and the resulting responsibility resting upon those who administer the same is one of the important elements to be considered in fixing the value of the services rendered, that element should not be given too great weight in considering questions such as are here presented.

The executor argues that, because the state, in fixing inheritance taxes, requires a higher tax in case of a bequest to a stranger to the blood than to a relative, the court, in fixing the compensation of an executor, may take into consideration the status of the beneficiary under the will which is being executed; and, in cases where such person is not an heir at law, may properly allow the executor a greater sum by way of compensation for his services than would be allowed if the beneficiaries under the will were nearly related to the testator by blood or marriage.

We find in the record no ground for believing that, in the case at bar, the trial court was influenced by any such thought, but we desire to state our entire lack of sympathy with this argument. The fees of the executor are to be determined strictly upon the basis of what is just and reasonable in view of the services rendered, and the court cannot take into consideration the fact that the ultimate beneficiary may be one who bears no blood relationship to the testator, or who is a resident of another jurisdiction. The laws

establishing the different percentages to be paid to the state by way of inheritance taxes afford no analogy whatsoever to the question here presented.

In *In re Hart's Estate,* 156 Wash. 255, 286 Pac. 650, this court said:

"Every such case must stand upon its own footing and exact parallels are seldom found. Our general rule is that this court will not interfere with the trial court's discretion, nor disturb its findings, unless there are facts and circumstances clearly showing an abuse of such discretion,"

with which pronouncement we are in entire accord.

We have examined the numerous cases cited by counsel for the respective parties to this appeal, and, in determining the matter here presented, have considered all of the prior opinions of this court bearing upon the question. After careful consideration, we are of the opinion that the allowances made by the trial court are excessive, and amount to an abuse of discretion within the rule laid down in the case cited. We are satisfied that the allowance to the executor for his services should not exceed the sum of two thousand dollars, and that three thousand dollars should be allowed him as compensation for his counsel.

The order approving the final account is affirmed on the appeal of the executor, and, on the appeal of Caroline Green, the order is reversed, with instructions to proceed in accordance with this opinion.

TOLMAN, C. J., MAIN, PARKER, and MITCHELL, JJ., concur.

HERMAN, J. (dissenting)—I dissent. Appellant, the sole beneficiary of the will of H. V. Perry, deceased, was a stranger to the blood. She was the recipient of the testator's bounty. This court, in passing on the question of attorneys' fees, might well consider the

rule it approved with reference to physicians' compensation in the case of *Houda v. McDonald,* 159 Wash. 561, 294 Pac. 249. There the court said:

"We are of the opinion that the rule best supported by reason, in any event as applicable to this case, is, that in some substantial measure the reasonable compensation of the physician is determinable by the ability of the patient or her husband to pay for the service; . . ."

I am unable to agree with that part of the majority opinion which holds the allowance to the executor's attorney unreasonable. The trial judge, before fixing the fee, had the benefit of hearing as witnesses two reputable members of the bar, with reference to whose evidence he made the following comment:

"I do not impeach them in the least because I believe their testimony was honestly given and with no intent to deceive or represent things to the court in consideration of the fees, and these two attorneys suggested an amount in excess of the amount fixed upon, and one was much in excess of $5,000 as attorney fee."

The trial judge had the advantage of being thoroughly familiar with the work involved, and was in a position to know the value of the services of the attorney for the executor. Not only did two reputable members of the bar testify that sums in excess of that allowed to the executor's attorney were reasonable, but the record is wholly devoid of any testimony that the sum allowed by the trial court was excessive. I cannot subscribe to the majority opinion, which holds the trial judge was guilty of an abuse of discretion when he allowed an attorney's fee of four thousand dollars for services rendered the executor.

The trial judge showed a true understanding of the situation with reference to compensation for lawyers' services. In passing upon the question of what was a proper allowance for the executor's attorney, he said:

438

"When one takes into consideration that a lawyer after his academic schooling must devote a long period of time to the study of law, and during that time is deprived of earning capacity, and, upon the contrary, is to a great expense; when we further consider the lean years which follow the entry into practice, the expense of accumulating a library and the constant demand upon the income of the beginner, all in expectation of a day of financial promotion—if I may use that term—we must realize that a lawyer must balance his accounts over his entire professional career, not as a merchant does—year by year. The tediously earned knowledge and experience added to lapse of time and cost of preparation constitutes an overhead which he has a right to spread over subsequent years. This means that he cannot be paid upon the basis of manual labor or of the papers he files and the arguments he makes. His trained knowledge, as I have pointed out, demands a larger compensation than that if we are to have a legal profession."

HOLCOMB and MILLARD, JJ., concur with HERMAN, J.