[No. 25563. *En Banc.* August 13, 1936.]

JOSEPH B. SMITH, *Respondent*, v. LYDIA V. KNEISLEY, *Appellant.*[1]

*Wright, Jones & Bronson,* for appellant.

*Wright & Wright, Stedman & Stedman,* and *M. W. Vandercook,* for respondent.

*Jay C. Allen* and *Adam Beeler, amici curiae.*

[1]Reported in 60 P. (2d) 14.

On Rehearing.

Tolman, J.—This case was heretofore heard in a Department of this court, resulting in an opinion which appears in 184 Wash. 26, 49 P. (2d) 916. Thereafter, a petition for rehearing was interposed and by the court granted.

The case was again argued to the court sitting *En Banc,* and a majority now entertains the view that the Departmental opinion cannot be sustained, and that the issues presented should be decided upon the merits. Therefore, passing all other questions raised, we have carefully studied the evidence in the case for the purpose of determining the basic fact as to whether there was any employment or whether services were rendered and accepted as alleged.

The respondent first sued on what was claimed to be a contract of employment, by the terms of which the amount of his fee was fixed. He failed to recover in the trial court, and on appeal to this court we said:

"This is one of those cases where upon the vital issues the respective parties and their witnesses testify to a diametrically opposite state of facts. Neither story is impossible. The respondent's version seems the more probable. It is supported by the greater number of witnesses. The trial court, who saw and heard them all, was of the opinion that these witnesses spoke the truth, and though we have painstakingly searched the voluminous record from beginning to end and have given thoughtful consideration to the able and pertinent comments of counsel as contained in an exhaustive brief, we are still unable to arrive at any other or different conclusion than the one reached by the trial judge." *Smith v. Kneisley,* 175 Wash. 29, 26 P. (2d) 387.

In neither the opinion from which we have just quoted nor in the Departmental opinion are the facts sufficiently stated for our present purpose. Hence, a

brief and exceedingly general outline of the situation must be now attempted.

On November 7, 1930, the husband of the appellant met a violent death under circumstances and surrounding conditions which gave rise in the minds of some to the thought that he may have committed suicide. At the time of the husband's death, his life was heavily insured, some of the policies providing for double indemnity in case of accidental death. On one of the large policies, the premium was overdue, but the period of grace had not expired. Another large policy had been taken out less than a month before the death of the insured, and the first premium had been paid by the delivery of his promissory note, which was then not quite due. The financial affairs of the deceased were involved, he was heavily indebted, and his immediate cash resources were small.

On the morning following the death, respondent, who had been acting as the attorney for the deceased in some matters for a year or a little more prior to his death, learning from the newspapers of the tragedy, sought or obtained an interview with the widow, the appellant here, and in that interview, according to his testimony, he was employed not only to probate the estate of the deceased, but also to collect the various policies of insurance which have been referred to. In the former action, he testified to a specific contract by the terms of which the appellant agreed to pay him a fee of fifteen per cent for the collection of the insurance policies if collection was obtained without suit, and a fee of thirty-three and one-third per cent if collection was made by suit. In the present action, he testified to the same contract of employment, except that he mentioned no terms and thus left the inference that his employment only was

agreed to, and that the subject of compensation was not considered.

In the former case, the trial court found that there was no such contract, and we, after considering the evidence, found that no other or different conclusion could be arrived at. While there is in this case some additional evidence, principally testimony as to admissions against interest, yet, considering the whole record, it overwhelmingly appears, both by the number of witnesses testifying and in reason and probability, that there was no agreement between the parties to employ the respondent to collect the insurance policies.

While the findings of the trial court seem to indicate an employment by expressed agreement, the oral opinion rendered by the trial judge indicates the view that, if there was no specific employment, still respondent rendered valuable services which were accepted by the appellant, and that therefore she is legally bound to pay the reasonable value of such services.

The trial court said:

''There is nothing in the record anywhere where the defendant at the time that these alleged services were performed ever instructed the plaintiff not to do what he claims he has done in her benefit in this matter and for which he is seeking recovery.''

and, again:

''That, likewise, is a natural outgrowth of the fact that the plaintiff acted as attorney for the deceased, and the testimony in this case in regard to the plaintiff acting as attorney for the defendant in the life insurance matter is a natural outgrowth of the fact that the plaintiff was attorney for the deceased, the husband of the defendant, and a natural outgrowth of the fact that the defendant employed the plaintiff to

have the will admitted to probate and to have the estate probated, and during all of this time the defendant permitted the plaintiff to so act.''

The trouble with the views thus expressed is that they assume two facts, proof of which cannot be found in the record, and overlook what seems to us absolute proof of other facts which abounds in the record. While it is true that there is nothing in the record indicating that the appellant instructed the plaintiff not to act in the matter of the life insurance, there is abundant proof that she did not know and had no reason to assume that he was attempting or proposing to act for her in the matter of the life insurance. While it would be natural, if it were necessary to employ an attorney to collect the life insurance, that the appellant would have turned to the respondent and employed him for such service, yet the record here abundantly establishes that there never at any time was an idea in the mind of the appellant that the employment of an attorney was necessary.

From the beginning, she had with her to advise and assist, her brother, who had come from a distance for that very purpose, her son, a young man of about twenty-one years of age, and a friendly life insurance man conversant with the situation. At all times, the agents of the insurance companies involved dealt with the appellant directly, furnished her with forms for making proof, and gave her such assurances that she felt confident that the insurance would be paid promptly without question and without litigation. From her standpoint, there was absolutely no reason for employing an attorney, and nothing done or said by the respondent was of a nature to put her on notice that he was purporting to act in her behalf.

In order to incur a liability in the absence of an

agreement, one must knowingly permit another to act in his behalf and knowingly accept the benefit of his services. Respondent failed to establish in this case either of the elements mentioned.

From the facts and circumstances known to the respondent at the time, it is apparent that he anticipated that the insurance companies would deny liability and that litigation would be necessary to compel them to pay. The record convinces us that his expectations and anticipations are the only basis for his subsequent belief that he was employed. He failed to take into consideration that the insurance companies, realizing the possibility of suicide, investigated the facts, became convinced that in any litigation the evidence would be such that a jury would promptly find that the death was accidental, and that therefore a refusal to pay would be profitless.

The overwhelming weight of the evidence establishes that the appellant did not employ the respondent, as he claims, on the morning following the death of her husband, that she did not permit him to act knowingly, and that she did not knowingly accept the benefit of anything he may have done. In truth and in fact, we cannot find from the evidence that anything that the respondent did do in any way contributed to bringing about the voluntary payment of the insurance by the companies involved, unless it be that his assistance which enabled appellant to obtain a bank loan, indirectly aided. But, if so, the appellant had every reason to believe that, in the matter of the loan, respondent was acting in the capacity of a friend of her deceased husband and not as an attorney. Certainly, the loan service here rendered was not a legal service.

Being convinced that the evidence preponderates

against the findings of the trial court, the judgment is reversed, with directions to dismiss.

MAIN, GERAGHTY, BEALS, and BLAKE, JJ., concur.

HOLCOMB, J., concurs in the result.

STEINERT, J. (concurring)—I adhere to the views expressed in the original opinion filed in this case, appearing in 184 Wash. 26, 49 P. (2d) 916. For this reason alone, I concur in the result of the opinion rendered upon the rehearing.

MILLARD, C. J. (dissenting)—I dissent. I do not agree that the evidence preponderates against the findings of the trial court. Nor am I in accord with the views expressed in the original opinion in this case (184 Wash. 26, 49 P. (2d) 916). Until suspended or disbarred by this court, an attorney at law of this state is morally and legally entitled to payment for legal services rendered to his client. The services performed were of a legal nature, the attorney at law had not been suspended or disbarred, the amount awarded is not excessive; therefore, I can conceive of no reason in law or morals on which to deny recovery. It has been said that "The man who provideth not for his own household is worse than an infidel."

I do not understand why courts should favor the medical profession in the matter of payment for services rendered and measure payment to members of the legal profession by another rule. Compare *Houda v. McDonald*, 159 Wash. 561, 294 Pac. 249, and *In re Perry's Estate*, 168 Wash. 428, 12 P. (2d) 595.

The judgment should be affirmed.