[No. 33445. Department Two. March 15, 1956.]

*In the Matter of the Estate of* LUCIA MERLINO, *Deceased.* ANGELO MERLINO, *Appellant,* v. DAVID O. HAMLIN, *as Administrator With the Will Annexed, Respondent.*[1]

*Geo. H. Rummens, Kenneth P. Short, Paul R. Cressman,* and *R. M. Oswald,* for appellant.

*Hay & Hamlin,* for respondent.

HAMLEY, C. J.—Angelo Merlino, the surviving husband of Lucia Merlino, filed objections to the final report and peti-

[1]Reported in 294 P. (2d) 941.

tion for distribution of the latter's estate. The objections brought into question a prior disbursement in the sum of $1,184.83 and the claim of David O. Hamlin, the administrator with the will annexed, for attorney's and administrator's fees in the sum of $20,000.

After a hearing, a decree of distribution was entered denying the objections, approving and confirming the final report, and allowing Hamlin attorney's and administrator's fees in the sum of $16,000. Merlino appeals.

David O. Hamlin, an attorney at law practicing in Seattle, qualified as administrator w.w.a. on July 12, 1951. At that time, the known assets of the estate consisted of $201.21 in cash. By means of discovery proceedings, followed by litigation which came to this court (*Hamlin v. Merlino*, 44 Wn. (2d) 851, 272 P. (2d) 125), appellant was forced to turn over to the estate, for probate, $80,000 in community assets. Interest and other accruals later brought the gross estate to about $90,000.

Hamlin conducted the two-day discovery proceeding and drew the complaint in the action later filed against Merlino. Hamlin associated Carl Pruzan as cocounsel in the trial and appeal which followed. Pruzan had represented two step-daughters in the discovery proceedings. He was reimbursed by them, and not the estate, on a contingent fee basis, for his services in the *Merlino* litigation. In the trial, which lasted five days, Pruzan interrogated all the witnesses and was characterized by Hamlin as "lead counsel." Hamlin was present during the trial, and conferred with and assisted Pruzan as occasion required.

In the trial court, the judgment was adverse to the estate, but was partially reversed on appeal, with the result indicated above. Pruzan did most of the work of preparing the brief for the estate and argued the appeal.

After the remittitur went down on October 25, 1954, Hamlin obtained possession of most of the assets which Merlino had been ordered to turn over and proceeded with the probate. It required about seven months to advance the probate to the point where the final report and petition for distribution could be filed. Except for a hearing on Mer-

lino's petition for property in lieu of homestead and for a family allowance, these proceedings were routine in nature. Most of the property consisted of liquid assets. There were no creditors' claims and no inheritance tax was assessed.

During the course of the probate, Hamlin served and filed an interim petition for authority to reimburse Pruzan in the sum of $1,184.83 for costs advanced in connection with the *Merlino* litigation. Appellant, although having notice of the hearing on the interim petition, made no objection. An interim order authorizing such payment was duly entered, and the money was disbursed. This transaction was referred to several weeks later in the final report which the court was asked to approve and confirm. Appellant then, for the first time, filed an objection to the item in question. Appellant assigns as error the disallowance of this objection.

An interim order made during the course of probate, after notice of the hearing, is final in its nature, and cannot, except upon a showing of extrinsic fraud (see *Farley v. Davis*, 10 Wn. (2d) 62, 71, 116 P. (2d) 263, 155 A. L. R. 1302), be attacked or relitigated at the hearing upon the final report. *Tucker v. Brown*, 20 Wn. (2d) 740, 800, 150 P. (2d) 604.

There is neither allegation nor proof of extrinsic fraud in connection with the disbursement in question. It follows that the objection was not timely and was, for that reason, properly disallowed.

The remaining assignments of error relate to the allowance of a $16,000 fee to Hamlin as attorney for, and administrator of, the estate.

Hamlin had asked for a $20,000 fee. At the hearing, he submitted a statement setting out in great detail, broken down to tenths of an hour, the work he had performed. According to this statement, he had devoted a total of 199.1 hours to probate matters. He testified that approximately one half of this time was spent on routine probate work, and the other half on the *Merlino* litigation.

Hamlin's claim to a $20,000 fee, however, was not speci-

fically based on this time computation. Instead, it was predicated upon the following factors: (1) the minimum fee for routine probate service by an attorney who also serves as administrator, specified in the Seattle bar association minimum fee schedule of June 4, 1952, calculated to be $4,000 for an estate of this size; (2) the result which was obtained, whereby the value of the estate was increased from $201.21 to $89,121.77; and (3) the circumstance that the availability of estate funds to pay any substantial fee was contingent upon the success of the action against Merlino. Hamlin evaluated these last two factors as entitling him to $16,000 in addition to the $4,000 minimum fee.

In contesting the claim for a $20,000 fee, appellant did not take issue with Hamlin's contention that one factor to be considered was the $4,000 minimum fee calculated on the basis noted above. Appellant also agreed with Hamlin that the latter was entitled to more than the minimum fee. Appellant took the position, however, that the total fee, including the $4,000 minimum, should range between $6,250 and $8,000.

Opinions as to what would be a reasonable fee falling within this range were expressed by three experienced attorneys, called to the witness stand by appellant. In expressing such opinions, these witnesses took account of the $4,000 minimum fee previously referred to, the number of days spent in court (at $150 a day), the number of office hours devoted to contested and nonroutine matters (at twenty dollars an hour), the competency and experience of Hamlin, the competency and experience of his opposing counsel in the *Merlino* case, the assistance Hamlin received from Pruzan, and the results obtained. One such witness also took into consideration the factor of contingency, but the other two witnesses believed this would be improper and did not do so.

In his oral opinion at the close of the case, the trial judge indicated that he was attaching considerable weight to the factor of contingency. The court also called attention to several other factors listed in the introductory statement in the Seattle bar association minimum fee schedule. In

fixing the fee at $16,000, the trial court also indicated that, had it not been for Pruzan's assistance, the full $20,000 which Hamlin claimed would have been allowed.

■ RCW 11.48.210 [cf. Rem. Rev. Stat., § 1528] requires the trial court to allow an administrator and attorney such compensation as to the court shall seem just and reasonable. In fixing the amount of such fee or fees, the court is to consider

". . . the amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance." *In re Peterson's Estate*, 12 Wn. (2d) 686, 728, 123 P. (2d) 733.

■ This court will not disturb the trial court's findings, unless there are facts and circumstances clearly showing an abuse of discretion. *In re Hart's Estate*, 156 Wash. 255, 286 Pac. 650.

■ In our view, the facts summarized above clearly show an abuse of discretion in fixing a fee in excess of $8,-000. Such a figure makes full allowance for the value of routine service in accordance with the minimum fee schedule to which reference has been made. It allows $150 a day for each day Hamlin was in court on the *Merlino* case, and twenty dollars an hour for office time devoted to contested matters. It allows some $1,250 to $1,750 additional in consideration of the other factors referred to in the *Peterson* case, *supra.*

An allowance in excess of $8,000 could only be justified by weighing very heavily the factor of contingency, which has been mentioned. We believe this would be insupportable in a case such as this, where another attorney who received his compensation directly from the heirs was associated as cocounsel and took the leading role. It is unnecessary for us to decide whether, under other circumstances,

the factor of contingency might be considered in fixing a probate fee.

The fee in question is reduced to $8,000. In all other respects, the decree is affirmed. Appellant will recover costs on this appeal.

MALLERY, HILL, FINLEY, and ROSELLINI, JJ., concur.