[No. 1078-1. Division One—Panel 1. July 10, 1972.]

*In the Matter of the Estate of* MIRIAM COFFIN, *Deceased.*

*Lundin, Estep, Sindell & Haley, Inc., P.S., Landon R. Estep,* and *James T. Marston,* for appellant.

*Wettrick, Toulouse, Lirhus & Hove* and *George J. Toulouse, Jr.,* for respondent.

HOROWITZ, C.J.—The sole question here is whether substantial evidence supports an attorney's fee allowance made for a nonintervention will executor's attorneys at a hearing on the executor's final report and account. The Aquarian Foundation, Inc., the residuary estate beneficiary, appeals contending the amount allowed is excessive.

Miriam Coffin died July 28, 1968. By her nonintervention will, she named Peoples National Bank of Washington as executor and the foundation as residuary beneficiary. The executor employed Messrs. Newman and McCann of Seattle, Washington, as estate attorneys. Mr. McCann had primary responsibility for legal services rendered.

After the will was admitted to probate, Mr. McCann discovered the decedent had a power of appointment in each of two trusts then administered by a Boston, Massachusetts trustee, Old Colony Trust Company of Boston.

Decedent's will did not specifically exercise either of the powers of appointment. However, upon discovery of their existence and after legal research, Mr. McCann informed the executor that under the minority rule as applied by the governing law of Massachusetts, the residuary clause in the decedent's will constituted an effective exercise of those powers.

Mr. McCann's opinion was independently confirmed by the executor bank's general counsel and by the attorneys for the trustee. Subsequent to Mr. McCann's opinion and at Mr. McCann's suggestion and with his help, the executor pursued the matter of obtaining possession of the assets resulting from the exercise of the powers of appointment. Considerable correspondence followed. Among other things, it was necessary to come to an agreement with the eastern trustee, who was advised by its own counsel, concerning what Mr. McCann considered were excessive demands for legal protection. With the advice and assistance of Mr. McCann, the disagreements were resolved. As a result, about 18 months after the first effort to obtain the estate assets, the trustee delivered to the executor bank assets totaling $221,793.18 in securities and cash. The probate estate was thereby augmented to $261,348.99, largely in liquid assets.

Early in the probate proceedings, the Aquarian Foundation, pursuant to RCW 11.28.240, filed a statutory demand for notice of the proceedings in probate. After the estate had been augmented and during a recess in the hearing on the foundation's inheritance tax exempt status, Mr. Fred Schoen, assistant trust officer of the executor bank, and Mr. McCann met briefly with Mr. Landon R. Estep, attorney for the Aquarian Foundation. They informed Mr. Estep that the bank would be seeking an executor's fee of $10,000 "because they had done a lot of work," and Mr. McCann stated "our firm would probably be asking for $30,000 due to the tremendous amount of time we put in to get this estate for them." Both Mr. Schoen and Mr. McCann testified they were under the impression that Mr. Estep be-

lieved the amount satisfactory. No contrary evidence was received concerning the conversation.

Shortly thereafter, the executor filed a verified petition in the probate proceedings seeking an executor's and attorney's fee allowance. The petition detailed the services of the executor and the estate attorneys and claimed the amounts previously described to Mr. Estep. The Aquarian Foundation was not served with a copy of the petition, received no notice of the hearing thereon, and did not appear at the hearing.

The petition was heard ex parte by the late King County Superior Court Judge Donald L. Gaines. Mr. McCann and the bank's senior trust officer, Mr. Bagnall, each testified in support of the petition. Upon conclusion of the hearing, at Judge Gaines' suggestion, the hearing was continued for additional testimony concerning the time spent in the probate proceedings. At the continued hearing, additional testimony was received: Upon the conclusion of that hearing, Judge Gaines entered an order dated October 30, 1969, reciting:

> [A]nd the Court having heard the testimony of Richard G. McCann on behalf of said petition and having heard the testimony of Walter Bagnall, Trust Officer of the Peoples National Bank of Washington in support of said Petition and having read said Petition and finding all things therein stated to be true and correct . . .

The order fixed the executor's fees at $10,000 and the attorney's fees at $22,470. The fees were then paid.

After Mr. Estep learned of the entry of the order, he corresponded with Mr. McCann for an explanation of the allowances made. The Aquarian Foundation remained dissatisfied. On February 24, 1970, it filed a petition, verified by the foundation's president, to set aside the fee allowances made claiming they were excessive and that they were invalid because made without notice and in violation of Rule 98.12W of the Special Proceedings Rules for the Superior Court and certain provisions of the probate policy

manual of the King County Superior Court dealing with the allowances.

On March 26, 1970, the petition came on for hearing. No testimony was offered. Judge Gaines dismissed the petition, but made a minute entry reading "Petition dismissed without prejudice to rehearing at final report." The order of dismissal contains no such provision. Nevertheless, the parties agree that the Aquarian Foundation at the hearing below was not precluded from a de novo hearing on the fee allowances attacked.

The executor, on December 17, 1970, filed its verified final report and petition for distribution. The petition detailed the history of the estate, the circumstances that led to the estate being augmented to $261,348.99, and the fee allowances made by Judge Gaines. It described other services rendered, including those connected with a court hearing on the inheritance tax exempt status of the Aquarian Foundation. The executor claimed additional fees for services rendered since Judge Gaines' order.

At the hearing below on the executor's final report and petition, the controverted issues were particularly centered on the nature of the services rendered and the fees previously allowed by Judge Gaines. Because on appeal no objections are made to the fee allowances for the executor's services, we consider the fee allowances for services of the estate attorneys.

At the hearing, the executor presented testimony to support its claim that the services of the estate attorneys were a substantial factor in augmenting the estate. Time slips of the attorneys showing the amount of time actually spent had been lost and were therefore not introduced in evidence. However, the petition for executor's and attorney's fees contained in the probate file and heard by Judge Gaines had attached to it an exhibit containing a detailed statement of substantial time spent by the attorneys. The executor offered expert testimony to support the ex parte allowance of $22,470 previously made by Judge Gaines in the manner stated. Testimony offered on behalf of the

Aquarian Foundation consisted solely of expert testimony concerning reasonable attorney's fees to be allowed. The expert testimony offered by each party came from Seattle lawyers long experienced in probate practice. Neither party attacks the good faith of the testifying attorneys. The opinions expressed ranged from a little over $7,735 to $22,470. No attorney testified that a reasonable fee to be allowed in the instant case should be confined to the minimum fee of $7,735 suggested in the Seattle-King County Bar Association schedule for probating an estate based upon its size.

The attorney testifying in the executor's case to the reasonableness of the fee of $22,470 assumed, without expressing his opinion on the validity of the assumption, "that the work of Mr. McCann materially contributed to the . . . increasing of this estate from an initial $39,000 odd to an eventual $261,000 estate . . ." He emphasized the beneficial result to the client rather than the time taken to obtain that result. He testified that he had considered the factors required to be considered in arriving at a reasonable fee as set forth in *In re Estate of Peterson,* 12 Wn.2d 686, 123 P.2d 733 (1942). He also pointed out that had Mr. McCann's services not been successful in obtaining the assets sought from the eastern trustee, the executor would have had to incur substantial litigation costs in Massachusetts to accomplish by litigation what had been successfully accomplished without it.

The attorney testifying to the lowest fee on behalf of the foundation did so on the basis that Mr. McCann's services were but minimally responsible for augmenting the estate. He considered those services to be "part of the normal probate administration." He therefore used the Seattle-King County Bar Association's minimum fee schedule to arrive at a fee of $7,735. However, he added two additional items, namely, $250 to $300 for preparing gift tax returns the decedent should have prepared, and an additional minimum fee based on the bar schedule for 2 days' trial in connection with the court hearing on the inheritance tax exempt status of the Aquarian Foundation.

The other attorney called by the foundation testified to a minimum fee of $7,735 and a maximum fee of $11,696.50, the latter being arrived at independently of the bar schedule. He arrived at the maximum fee by first using what he considered a reconstructed liberal time estimate of the time spent multiplied by a liberal $50 per hour' charge, thereby arriving at the sum of $10,196.50. To this sum he added $1,000 "for the diligence with which [Mr. McCann] handled that trust matter . . . ," referring to the dealings with the eastern trustee. He finally added $500 more for Mr. McCann's services in connection with the hearing on the inheritance tax exempt status of the Aquarian Foundation, the burden of carrying which had been undertaken by the foundation's own counsel. He testified that he had considered the factors required to be considered in fixing reasonable attorney's fees in *In re Estate of Bailey,* 56 Wn.2d 623, 354 P.2d 920 (1960).

Neither of the lawyer witnesses for the Aquarian Foundation was asked hypothetically what his opinion would be on the assumption that the estate counsel substantially contributed to or was substantially responsible for the augmentation of the estate. However, the attorney testifying to the larger fee on cross-examination expressed the opinion that estate counsel would be fully compensated for his services rendered, including services by way of augmentation, by receipt of the $11,696.50 fee to which he had testified.

At the conclusion of the trial, the court rendered an oral opinion agreeing with Judge Gaines' allowance of $22,470. He stated:

I am convinced that the services of the lawyers were very material, in fact, the cause of this beneficiary getting this completely undeserved and unexpected windfall. I think the fees fixed by Judge Gaines were reasonable. There has been no attempt to increase them. For that reason, I don't.

He then allowed an additional $500 as attorney's fees for work "they have had to do in three times resisting, sustain-

ing Judge Gaines' order, which I affirm in all respects and adopt it as my own  . . ."

On January 26, 1971, the trial court entered an order approving the final account and petition for distribution, formally allowing additional fees of $990 to the executor and $500 to the estate attorneys. The court entered no formal findings and conclusions. However, the written order appealed from reads:

> [A]nd the court having heard all the evidence submitted in proof of said Final Report and Petition for Distribution, and finding all things therein stated to be regular and in order  . . .
>
> IT IS HEREBY ORDERED that said Final Report be fully approved by this Court and that all things and matters handled by the said Executor and his attorney be approved and allowed, and that the Final Report be made a part of the findings of this Court.

The $10,000 executor's fee allowance was substantially in excess of the bank's published minimum fee schedule based on the size of the augmented estate. The executor had sought the sum allowed on the basis of additional services required of it beyond that ordinarily required of an executor, namely, the augmentation of the estate.

The Aquarian Foundation assigns error only to the attorney's fee allowance. It argues that the services of the estate attorneys were neither a substantial factor in nor a cause of estate augmentation, and, in any case, that the fee allowance is excessive, obtained in bad faith, and that the excess should be ordered repaid by the attorney. The trial court expressly and impliedly rejected these contentions. The controlling question presented is whether the trial court exceeded his powers in holding the fees allowed to be reasonable. We hold the court acted within his powers and uphold the order from which this appeal is taken. In doing so, we consider together the questions whether there is an adequate finding concerning the importance of the legal services rendered, and, if so, whether substantial evidence supports the amount allowed.

■ The bank, as a nonintervention will executor, had the power either to pay attorney's fees without a court order, or to pay such fees pursuant to court order after proper notice to the interested parties and after hearing. *In re Estate of Peabody,* 169 Wash. 65, 13 P.2d 431 (1932). *See Jones v. Peabody,* 182 Wash. 148, 45 P.2d 915, 100 A.L.R. 64 (1935). True, the exercise of nonintervention will powers is subject to accountability under RCW 11.68.030 if the executor "fails to execute the trust faithfully and to take care and promote the interest of all parties . . ." Under the statutory standard, the executor's payment of an attorney's fee liberal in amount is not necessarily violative of the statute. In the language of the plurality opinion of *In re Estate of Coates,* 55 Wn.2d 250, 347 P.2d 875 (1959):

> A mere honest difference of opinion is not enough. . . . Calling the fees charged "excessive" is not sufficient to vest jurisdiction where no intent to mulct the estate was proved or found.

55 Wn.2d at 260. *See In re Estate of Holmgren,* 189 Wash. 94, 63 P.2d 504 (1937).

In the instant case, the executor did not itself first fix and then pay the fees. The executor, no doubt with its attorney's advice and cooperation, by formal petition submitted the amounts to be allowed to the probate court and only after allowances had been approved did the executor pay the fees. No doubt the foundation should have been given formal notice of the hearing pursuant to the foundation's earlier filed demand for notice. However, in view of the disclosure by Messrs. Schoen and McCann of intention to apply for $10,000 executor's and $30,000 attorney's fee allowances, coupled with what the witnesses testified was Mr. Estep's apparent approval of the amounts stated, we cannot say that the failure to give the required notice constituted bad faith. After Judge Gaines' determination and at the de novo hearing below on the executor's final account and petition for distribution, at which the foundation exercised its undisputed right to present evidence concerning the reasonableness of the allowances involved. the trial

court agreed with the allowances made by Judge Gaines as being reasonable. By that agreement, he necessarily and impliedly found that the executor and its counsel had acted in good faith in paying the fees allowed by Judge Gaines under the circumstances described, and certainly with no intention to mulct the estate.

■ ■ On appeal, in attacking the reasonableness of the attorney's fee allowances, the foundation does not contend that the reasonableness of the allowance should be reviewed de novo. It argues this court must examine the record as a whole to determine whether there are "facts and circumstances clearly showing an abuse of discretion." It cites *In re Estate of Bailey*, 56 Wn.2d 623, 354 P.2d 920 (1960). However, the foundation also argues "this is *not* a *Thorndike* appeal," and that "the task of appellate review in these cases is quite unlike simply looking for the few places in the record that may be said to amount to 'substantial evidence' to support the trial court's findings of fact." The argument so made is closely akin, at least, to one calling for de novo review.

It is true there are cases in this state which seemingly review attorney's fee or personal representative's fee allowances on a de novo basis. *In re Estate of Thompsen*, 133 Wash. 481, 233 P. 941 (1925); *In re Estate of Curtis*, 116 Wash. 237, 199 P. 309 (1921); *In re Estate of Johnston*, 107 Wash. 25, 181 P. 209 (1919); *In re Estate of Hagerty*, 97 Wash. 491, 166 P. 1139 (1917); *Shufeldt v. Hughes*, 55 Wash. 246, 104 P. 253 (1909); *Noble v. Whitten*, 38 Wash. 262, 80 P. 451 (1905). These cases do not, in words at least, purport to overrule the abuse of discretion test. The abuse of discretion test was applied in the cases next cited. Such cases do not mean that an appellate court by de novo review may substitute its findings of fact for those of the trial court. *In re Estate of Douglas*, 65 Wn.2d 495, 398 P.2d 7 (1965); *In re Estate of Bailey, supra; In re Estate of Merlino*, 48 Wn.2d 494, 294 P.2d 941 (1956); *Tucker v. Brown*, 20 Wn.2d 740, 842, 150 P.2d 604 (1944); *In re Estate of Fetterman*, 183 Wash. 410, 48 P.2d 638 (1935); *In re*

*Estate of Perry,* 168 Wash. 428, 12 P.2d 595 (1932); *In re Estate of Hart,* 156 Wash. 255, 286 P. 650 (1930). Thus, it is an abuse of discretion to allow attorney's fees to be treated as contingency fees (*In re Estate of Bailey, supra; see In re Estate of Merlino, supra*); or to allow fees for services not rendered for the benefit of the estate (*In re Estate of Douglas, supra*); or to allow fees deemed excessive for the services rendered (*Tucker v. Brown, supra; In re Estate of Fetterman, supra; In re Estate of Perry, supra*).

Even in *In re Estate of Coates, supra,* the abuse of discretion test was not discarded. Three judges joined in the plurality opinion rejecting the trial court's evaluation of expert testimony on attorney's fees in favor of their own evaluation. Two judges concurred in the result, and four judges dissented. The dissenting judges, in effect, insisted upon applying the abuse of discretion test even with respect to expert testimony. They held that the expert testimony believed by the court was substantial evidence adequate to support the trial court's finding on the reasonableness of attorney's fees.

Expert testimony on attorney's fees is substantial evidence. *See In re Seattle,* 79 Wn.2d 490, 487 P.2d 777 (1971). Accordingly, we see no reason for not applying the rule of *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959), to attorney's fee determinations. Indeed, the *Thorndike* rule has been expressly applied to an attorney's fee allowance made by the trial court under the eminent domain statute, RCW 8.25.070, by reasoning applicable here. *State v. Siler,* 79 Wn.2d 789, 489 P.2d 921 (1971). Accordingly, our task is to determine whether substantial evidence in the form of expert opinion testimony, or otherwise, supports the trial court's determination and at least implied finding that the attorney's fees allowed are just and reasonable and that the test of faithful performance of duty has thus been met.

In considering the nature of substantial evidence needed, we disregard as irrelevant the mere fact that the foundation, in the exercise of its right so to do, protested the

amount of the fees claimed. If, however, the protests involve additional work by estate counsel, additional compensation for such additional work may be awarded. We also agree with the foundation that whether the legacy to it was deserved or in the nature of a windfall is an irrelevant consideration here. *In re Estate of Fetterman, supra; In re Estate of Perry, supra.*

The Aquarian Foundation implies, at least, that the *Thorndike* rule cannot be applied here because "the trial court here entered no findings of fact." The foundation assigns no specific error to the absence of a formal finding either as to the significance of the part played by estate counsel in augmenting the estate, or as to the amount allowed. Reference to the recitals in the order, supplemented by the court's oral opinion consistent with the order and its recitals, makes the basis of the court's allowances quite clear. Indeed, each party predicates its argument on the assumption that the trial court's determination is known and the basis of that determination is stated in the record. The foundation seeks review of the attorney's fee allowance on the basis of the record as made. Under these circumstances, we see no reason why we cannot apply the *Thorndike* rule to the attorney's fee allowances made by the trial court. *See State v. LaRue,* 5 Wn. App. 299, 487 P.2d 255 (1971).

██ The question of the estate attorney's contribution to the augmentation of the estate was a question of fact for the trial court. He had a right to accept testimony concerning Mr. McCann's discovery of the governing Massachusetts rule with respect to the validity of the exercise of the powers of appointment and of Mr. McCann's subsequent efforts based on that discovery. The fact that the executor helped, or the fact that Mr. McCann's opinion was shared by the executor's general counsel or was one to which the eastern trustee agreed, does not derogate from the fact that the discovery of the legal principle began with Mr. McCann and that subsequent estate efforts based on that discovery succeeded in substantially augmenting the estate. We can-

not say as a matter of law that the evidence concerning Mr. McCann's services and reasonable inferences therefrom are merely of scintilla quality. *See State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). On the contrary, the evidence is substantial.

On the issue of the reasonable fee to be allowed for the services of estate counsel, the expert testimony offered in the executor's case, coupled with Mr. McCann's testimony concerning his services, was substantial evidence. It is true that evidence offered on behalf of the Aquarian Foundation disputed the expert testimony offered in the executor's case. However, the court did not exceed his powers in refusing to agree with that testimony. Thus, the lowest fee testified to was predicated upon a fact assumption that the trial court rejected. *See In re Local Improvement No. 6097,* 52 Wn.2d 330, 324 P.2d 1078 (1958). With respect to the next highest fee testified to, the court had a right to believe that the opinion testified to failed to give proper effect to the benefits resulting to the estate and its beneficiaries from Mr. McCann's services. The formula used in arriving at that maximum fee, while seemingly based upon objective standards, actually involved subjective adjustments based upon what the witness testified was a liberal time allowance, a liberal hourly charge, and an allowance for diligence. An allowance based on time or diligence is not necessarily an adequate guide to a determination of a reasonable allowance if an allowance for time and diligence fails to properly reflect the benefit to the client. *In re Estate of Wheeler,* 71 Wn.2d 789, 431 P.2d 608 (1967). Results achieved must clearly be considered. *State v. Siler, supra.* In arriving at a reasonable fee, one must differentiate between a fee for an estate whose assets are routinely included and an estate where assets must be produced or obtained. Considering results does not mean the fee is a contingent fee.

Attorney's fees cannot be fixed by mere resort to mathematical principles or by reliance on a single rule mechanically determining the proper fee to be allowed. The court

must give proper weight to each of many permissible factors as those factors have been described in the decisions. *In re Estate of Bailey, supra; In re Estate of Peterson,* 12 Wn.2d 686, 123 P.2d 733 (1942); Canon 12 of the Canons of Professional Ethics, now superseded by DR 2-106; Annot., 143 A.L.R. 672 (1943); Annot., 56 A.L.R.2d 13 (1957); *Merrick v. Deering,* 30 N.M. 431, 236 P. 735 (1925).

Based on the court's determination, supported by substantial evidence, that Mr. McCann's services were a "very material" factor, "the cause" of the augmentation of the estate, we cannot say that the allowance was so devoid of reason that it should be overturned. *See Ivy v. Argentieri,* 2 Wn. App. 999, 471 P.2d 122 (1970).

As stated in *State v. Siler, supra,* in upholding a substantial attorney's fee award for highly beneficial services rendered to a client, in light of the *Thorndike* rule:

It was proper for the trial court to have considered the amount involved in the controversy as well as the benefits derived by the respondents from the services of their attorneys. CPE 12(4).

Both the state and the respondents presented extensive expert testimony concerning the value of services rendered by respondents' attorneys. Needless to say, it was in considerable conflict. It was necessary for the trial court to resolve the dispute.

. . . We cannot say that the trial court's finding upon the disputed issue exceeded the limits of the testimony or was without substantial evidentiary support. This being so, we are constitutionally inhibited from substituting our evaluation of the evidence for that of the trial court. *Zillah Feed Yards, Inc. v. Carlisle,* 72 Wn.2d 240, 432 P.2d 650 (1967); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

. . .

Based upon the record before us, the criteria upon which the trial court relied was entirely proper. There was no abuse of discretion.

[A]buse of judicial discretion is not shown unless the discretion has been exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable.

*State ex rel. Beffa v. Superior Court,* 3 Wn.2d 184, 190, 100 P.2d 6 (1940).

79 Wn.2d at 792.

The additional allowance of $500 for attorney's services rendered in connection with the hearing on final account was discretionary with the court. It is not claimed that the additional amount is itself excessive. We cannot say that the court's discretion was clearly and manifestly abused.

Finally, as stated in *In re Estate of Coates, supra,* in language the impact of which is appropriate here:

It is significant that the trial court *did not* find that appellant had been "recreant to its trust" or "had not discharged the trust imposed upon . . . [it] faithfully."

55 Wn.2d at 260.

The judgment is affirmed.

WILLIAMS and SWANSON, JJ., concur.

Petition for rehearing denied September 26, 1972.

Review denied by Supreme Court November 8, 1972.