[No. 38196.    Department Two.    August 17, 1967.]

*In the Matter of the Estate of* WALTER L. WHEELER, *Deceased.*
MYRON WHEELER *et al., Appellants,* v. MONHEIMER,
SCHERMER, VAN FREDENBERG & SMITH *et al.,*
*Respondents.**

*Reported in 431 P.2d 608.

*Heckendorn & Best,* for appellants.

*Monheimer, Schermer, Van Fredenberg & Smith,* for respondents.

WARD, J.†—The sole purpose of this appeal is to seek review of orders of the court fixing attorneys' fees for services rendered. The assignments of error made require a review of part of the proceedings in the administration of the estate of Walter L. Wheeler, deceased. The probate of this estate was commenced on April 9, 1958, and the estate has not yet been closed. The petition for probate of decedent's will was filed by Myron R. Wheeler, a brother, who was named as executor in the will. Following his appointment, Myron R. Wheeler filed his inventory under oath, stating that the property of the estate was of less value than $1,000 "and consists of cash which was removed by unauthorized persons and not yet located, clothing, and personal items only."

The beneficiaries under decedent's will were his mother, May Switzer, for whom the decedent provided a life estate, and his four brothers, Elmer Wheeler, Myron Wheeler, Ralph Wheeler and Albert Wheeler, and his sister Dorothy Dugdale to whom decedent devised and bequeathed the remainder in equal shares. Walter Curnutt acted as attorney for the executor from April, 1958, until September, 1963. Shortly after the will was admitted to probate, three of the brothers, Albert, Ralph and Elmer, engaged the services of D. Van Fredenberg, a member of the Seattle bar, to bring an action against Myron Wheeler and his sister Dorothy Dugdale. In this action the plaintiffs sought to set aside a deathbed deed and bill of sale executed by the decedent, pursuant to which Myron and Dorothy claimed to have acquired from the decedent substantially all of the decedent's property. The action was vigorously contested by

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Myron and Dorothy. The court found in that case that at the time Walter L. Wheeler signed the instruments, he was near death resulting from cancer, and that he was then incompetent to execute the instruments. Judgment was entered setting aside the deed and bill of sale. The legal services rendered by Van Fredenberg resulted in the enrichment of the estate with property which was then considered to have a value of more than $70,000. The property of the estate was appraised on January 23, 1960, in the total sum of $78,300. It was later reappraised on November 13, 1963, in the total sum of $68,300.

On February 2, 1960, Albert Wheeler, acting in behalf of the three brothers who had been successful as litigants, filed a petition in the estate asking that the court fix Van Fredenberg's fee for the services which he had rendered in that litigation, and that the fees and cost of the action be made a charge against the estate. A citation was thereupon issued out of the probate court requiring Myron Wheeler, as executor, to appear and show cause why the petition should not be granted. Pursuant to such citation, the executor and the attorney for the estate appeared before the court on March 11, 1960, and testimony was presented by the petitioner and his witnesses with respect to the value of the services rendered by Van Fredenberg. The hearing upon the petition was had before the Honorable Robert O. Beresford, acting as judge pro tem., who entered an order on April 5, 1960, which was, in effect, a judgment, fixing the sum of $7,830 as a reasonable attorney's fee for the services rendered by Van Fredenberg in cause No. 520125 entitled "Elmer, Ralph and Albert Wheeler v. Myron Wheeler and Dorothy Freida Dugdale." The order also directed that such judgment be a valid charge against the estate of Walter L. Wheeler, deceased.

Mr. Van Fredenberg thereafter had no contact with the affairs of the estate until February, 1963. At this time, the state of Washington had commenced proceedings in eminent domain seeking to take a substantial part of the real property owned by the estate, including the Brown Derby

Tavern, for freeway purposes. Myron Wheeler, the executor, thereupon engaged the services of Mr. Van Fredenberg to represent the estate in the condemnation proceedings.

The state's offer for the property to be taken at that time was $38,345. On behalf of the estate, Mr. Van Fredenberg engaged the services of a reputable and experienced appraiser who determined that just compensation for the property to be taken would be $42,050. Mr. Van Fredenberg thereupon engaged the services of a second appraiser who determined that just compensation to the estate for the property to be taken was $48,000. His services ended when he succeeded in effecting an out-of-court settlement with the attorney general's office pursuant to which the estate received $51,000 for the property taken. This was $3,000 over the highest appraisal he was able to obtain. Legal services rendered by Mr. Van Fredenberg resulted in the estate receiving $12,655 more than the sum first offered by the state. For these services to the estate, the court allowed Mr. Van Fredenberg $2,500.

After the settlement of the condemnation case was effected, the executor engaged the services of the legal firm with which Mr. Van Fredenberg was associated, Monheimer, Schermer, Van Fredenberg and Smith, to complete the probate of the Walter L. Wheeler estate. From then on, most of the legal services for the estate were rendered by Mr. Monheimer. From 1958 until Mr. Monheimer took over in 1963, little had been done in the administration of the estate other than the admission of the will to probate and the filing of the inventory and appraisement.

It is not necessary to detail all of the services rendered by Mr. Monheimer in the estate matters. The executor called David O. Hamlin as his expert witness on the value of Mr. Monheimer's services in the probate proceedings. Mr. Hamlin is a qualified, experienced Seattle attorney. He testified with respect to Mr. Monheimer's services: "In my judgment, he has performed, I would say, at least two-thirds of the entire job of administering this estate. The ordinary fees would be $2240. I think two-thirds of that would be roughly $1500."

We note that the services rendered by Mr. Monheimer included several matters which are not usually included in handling an estate. Mr. Hamlin was the only disinterested witness who testified as to the value of Mr. Monheimer's services. The court fixed the fee in the sum of $1,450.

Mr. Monheimer had the final report prepared when the executor became dissatisfied with his services. On May 7, 1964, the executor filed a petition requesting the court to authorize substitution of his present counsel for the firm of Monheimer, Schermer, Van Fredenberg and Smith. His petition also requested a hearing for determination of reasonable attorneys' fees for both the condemnation matter and for Mr. Monheimer's services to the estate. Mr. Van Fredenberg also filed a petition asking the court, on hearing, to determine the amount of fees earned by his firm in the condemnation proceedings, and for the services rendered directly in the probate proceedings.

It will be noted that neither petition requested any vacation of the judgment entered on April 5, 1960, fixing Mr. Van Fredenberg's compensation for services rendered in the case which resulted in setting aside the deed and bill of sale. No petition has ever been presented to the court either by the executor or any of the beneficiaries under the will to vacate such judgment. Neither of the petitions filed in 1964 request any relitigation of the issues determined 4 years previously. Neither the executor nor any of the heirs expressed any dissatisfaction with the amount of fee allowed by this judgment until the executor filed his petition for substitution of counsel in April, 1964.

On the hearing of the petitions, the executor sought to relitigate the issues determined in 1960, but the trial court ruled that the matter was res judicata. The attorney for the executor thereupon made an offer of proof, stating the facts which he would attempt to prove if permitted to relitigate the fee allowed Mr. Van Fredenberg in 1960.

In his assignments of error, the executor claims that the probate fee of $1,450 and the fees allowed for legal services in the condemnation proceedings in the sum of $2,500 were

excessive. The executor also assigns as error the refusal of the court to permit him to relitigate the issues determined by the judgment entered in 1960.

The executor claims that the amount of fees allowed in both the probate proceedings and in the condemnation proceedings were unreasonable and excessive when computed upon an hourly basis using the Seattle Bar Association's minimum fee schedule as a standard for such charge on an hourly basis. If this standard, only, could be properly used, the executor would be correct.

■ The hourly basis is a proper standard to be used by attorneys who wish to perform services on either an express or implied contract, using the hourly rate as the sole standard for determining their fee. Here the attorney would be inadequately compensated for his services if it were measured solely by the amount of time spent.

In this case, one standard for measurement of a reasonable fee which must be considered is the benefit to the client resulting from the legal skill and experience employed in the client's behalf. In addition, Canon of Professional Ethics 12 also directs that a standard for measuring a proper fee is the customary charge of the bar for similar services. The trial court had evidence before it that the fee allowed was less than customary for similar services. Considering all proper standards in this case, we find no error in the allowance of $2,500 for the services rendered in the condemnation matter. The fees allowed for Mr. Monheimer's services are in accordance with the standards adopted in a leading case on fees. *In re Peterson's Estate*, 12 Wn.2d 686, 123 P.2d 733 (1942), and set out on page 728 of the opinion. Neither was there error in the allowance of $1,450 for these services.

The executor's principal claim of error is based on the court's refusal to permit him to relitigate the $7,830 fee fixed by the court in 1960. On this assignment of error, the executor makes two principal contentions. (1) That the judgment entered in 1960 was void because the heirs were not given notice as provided by Rule of Pleading, Practice

and Procedure 98.12W, RCW vol. 0,[1] and (2) that the judgment fixing the fee in 1960 was in the nature of an ex parte order and reviewable by the court under the rule of *In re Peterson's Estate, supra,* particularly the rules discussed under headnote 6 and 7 of that lengthy opinion.

Both of these contentions may be considered together. The appellants' position is untenable in asserting that the judgment entered on April 5, 1960, should be treated as an ex parte order. A citation was issued pursuant to order of court directing the executor to appear in court for the determination of the factual issues presented by the petition of Albert Wheeler. The executor's appearance pursuant to this citation gave the court jurisdiction over the parties to the controversy and also jurisdiction over the subject-matter of the dispute. The citation process used was equally effective in giving the court jurisdiction as though the proceedings were had upon summons and complaint. Our probate statutes RCW 11.02.030 and RCW 11.16.080 expressly authorize the court to obtain jurisdiction over controversies through the use of such process as was used in this case.

Jurisdiction obtained by use of the citation process permits entry of a valid judgment against the executor, who is expressly cited into court, and such judgment is binding upon the heirs, devisees and beneficiaries who are privy thereto. *In re Murphy's Estate,* 98 Wash. 548, 168 Pac. 175 (1917).

---

[1]"Before compensation shall be allowed to any executor, administrator, guardian, or attorney in connection with any probate matter or proceeding, or to any receiver or his attorney, and before any agreement therefor shall be approved, the amount of compensation claimed shall be definitely and clearly set forth in the application therefor, and all parties interested in the matter shall be given notice of the amount claimed in such manner as shall be fixed by statute, or, in the absence of statute, as shall be directed by the court; unless such application be filed with or made a part of a report or final account of such executor, administrator, guardian, or receiver." Rule of Pleading, Practice and Procedure 98.12W, RCW vol. 0.

In *Litzell v. Hart,* 96 Wash. 471, 477, 165 Pac. 393 (1917), it was said:

Heirs, legatees and devisees are, therefore, privies to judgments touching the estate rendered in actions by administrators or executors, though they would not have been privies at common law. As said by Freeman, "the courts have generally given to the judgments in such actions the same effect as if the heirs and all other parties in interest were nominal parties thereto." 1 Freeman, Judgments (4th ed.), p. 305, § 163a; *Cunningham v. Ashley,* 45 Cal. 485.

See, also, *Goodwin v. American Sur. Co.,* 190 Wash. 457, 68 P.2d 619 (1937); 21 Am. Jur. *Executors and Administrators* § 969, p. 918 (1939).

We have previously noted that neither of the petitions before the court on the hearing on November 4, 1964, purported to make either a direct or collateral attack upon the judgment entered on April 5, 1960. If we assume, however, that the offer of proof made by counsel for the executor constituted a collateral attack upon that judgment on behalf of the heirs, then we must consider whether or not failure to issue citation or give notice directly to the heirs pursuant to the provisions of RPPP 98.12W, *supra,* rendered the judgment of April 5, 1960, void.

■ It is our conclusion that the judgment of April 5, 1960, is not void on account of failure by the court to give notice to the heirs pursuant to RPPP 98.12W, *supra.* This rule applies primarily to compensation awarded to the executor, administrator and their attorneys pursuant to the provisions of RCW 11.48.210.

■ The judgment of April 5, 1960, was not an award of attorneys' fees for services rendered to the executor, under the provisions of RCW 11.48.210. The award was made upon an entirely different legal principle. It was made for legal services rendered in cause No. 520125, an action in which three heirs of Walter L. Wheeler sued two other heirs to vacate and set aside a deed and bill of sale. This was in the nature of a class action brought for the benefit of all who might benefit from the trust fund which would

result from a successful termination of this class action. A trust fund so created is subject to an equitable lien for the fair and reasonable costs and expenses, including attorneys' fees incurred in creating the trust fund. Before such trust fund may be distributed to the equitable owners, such equitable lien must first be discharged. We have recognized this rule in *Drain v. Wilson,* 117 Wash. 34, 37, 200 Pac. 581 (1921), a case having a factual pattern almost identical with the situation which was before the court in cause No. 520125. In that case, we said:

> The charge in the amended complaint is ample to merit compliance with the general rule that equity will impose the burden and expense of necessary litigation, including counsel fees, upon a trust fund for the benefit of which the litigation is successfully maintained, in cases of good faith on the part of the attorneys rendering the service and of the parties (representing themselves and all others benefited) employing such attorneys. *Baker v. Seattle-Tacoma Power Co.,* 61 Wash. 578, 112 Pac. 647, Ann. Cas. 1912C. 859; *In re Williamson,* 75 Wash. 353, 134 Pac. 1066; *Ford v. Gilbert,* 44 Ore. 259, 75 Pac. 138; *Campbell v. Provident Saving & Loan Soc.,* 61 S.W. (Tenn.) 1090; *Lamar v. Hall & Wimberly,* 129 Fed. 79; *Trustees v. Greenough,* 105 U.S. 527.
>
> . . . .
>
> The claim here asserted is in the nature of an equitable lien upon the trust fund created after Drain's death . . . .

In *Tanner v. Superior Court of Los Angeles Cy.,* 43 Cal. App. 2d 732, 735, 111 P.2d 713 (1941), the court said:

> It is true that where legal services are rendered in protecting or preserving a common fund for the benefit of some who did not participate in the labors to effect its preservation, the expense of such services including counsel fees is a proper charge against the common fund so preserved or protected. (7 Cor. Jur., sec. 1098; *Hempstead et al. v. Meadville Theological School et al.,* 286 Pa. 493 [134 Atl. 103, 49 A. L. R. 1145]; *Drain v. Wilson,* 117 Wash. 34 [200 Pac. 581]; *Bean v. Bean,* 74 N.H. 404 [88 Atl. 409, 124 Am. St. Rep. 978]; *Brand v. Denson,* (Tex. Civ. App.) 81 S.W. (2d) 111.)

It is true that Mr. Van Fredenberg's compensation was fixed pursuant to proceedings brought upon the citation issued out of probate court, but it was not necessary that Mr. Van Fredenberg's equitable lien be determined in the probate proceeding. His compensation could as well have been determined in cause No. 520125 or in any other proceedings by the court in the exercise of its equitable jurisdiction. *Brand v. Denson*, 81 S.W.2d 111 (Tex. Civ. App. 1935).

An annotation is found in 49 A.L.R. 1149, entitled "Allowance of attorney's fee against property or fund increased or protected by attorney's services." The principal headnote of this annotation is as follows:

> The rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.

See, also, 107 A.L.R. 749 for supplemental decisions under this headnote.

All of the heirs, legatees and beneficiaries under the will of Walter L. Wheeler are bound by the judgment entered on April 5, 1960, fixing the amount of the equitable lien held by D. Van Fredenberg and arising out of the services rendered to all class members, in cause No. 520125, and the judgment is not subject to collateral attack by any such parties.

The final assignment of error is based on the trial court's refusal to make findings of fact in the matter of interest on the several items of fees owning to Mr. Van Fredenberg and his firm. Respondent contends that this issue was not raised by the pleadings and that the court could not therefore determine the issue. We agree.

True, three of the Wheeler heirs testified that Mr. Van Fredenberg said he had no intention to charge interest on any money owing to him. Even if we deem the pleadings amended to conform to this proof, still that testimony standing alone, as it does, does not raise a justiciable issue on waiver of interest. To raise such issue, the testimony would have to be supplemented by evidence of consideration for the waiver, or some issue of equitable cognizance such as estoppel or detrimental reliance on the statement.

All we determine now is that the issue of waiver of interest was not before the court on pleadings, either formal or informal.

Judgment affirmed.

DONWORTH, WEAVER, ROSELLINI, and HAMILTON, JJ., concur.

*Reported in 431 P.2d 209.