[No. 1135-2. Division Two. April 22, 1975.]

*In the Matter of the Estate of* GEORGE J. BONNESS, *Deceased.*

*Susan F. French,* for appellants.

*Michael J. Swofford* and *Graham, McCord, Dunn, Moen, Johnson & Rosenquist,* for respondent National Bank of Commerce.

*David H. Armstrong* and *Sanchez, Martin & Armstrong,* for respondent Anderson.

*Frank A. Shiers,* for estate of Bonness.

PEARSON, J.—This is an appeal from an order in probate directing the administratrix de bonis non with will attached of the estate of George J. Bonness, deceased, to pay to the testamentary trustee the sum of $7,943.72, in accordance with an accounting approved by the court after a

contested hearing. The propriety of several items of the accounting is at issue in the appeal.

George J. Bonness died testate on April 21, 1963, in Bremerton, leaving a gross community estate in Kitsap County of $254,237.47. His will named his wife, Anona F. Bonness, as nonintervention executrix, and she subsequently was appointed, qualified, and served as such until her death on June 2, 1970.

The contestants to the accounting rendered by a successor administratrix are three adult children (by a former marriage) of George Bonness (hereafter appellants), who are three of four beneficiaries of the testamentary trust established by decedent's will. Respondent and cross-appellant is the successor administratrix, Ellen Patricia Anderson. She is the daughter of Anona F. Bonness by a prior marriage, a beneficiary of the trust, and executrix and sole heir under the will of Anona F. Bonness, deceased.[1] The other respondent, National Bank of Commerce of Seattle, is a cotrustee (hereafter Bank) with Anona F. Bonness, as nominated by the will in question.

The will of George J. Bonness left the residue of his estate to Anona F. Bonness and the National Bank of Commerce as cotrustees, to pay the net income to Anona F. Bonness for life. The Bank was given sole discretion to invade the corpus of the trust in its entirety for the "proper care, maintenance and support" of Anona F. Bonness, if in its opinion the income was insufficient for such purposes.

On the death of Anona F. Bonness, the trust estate was to be distributed in equal shares to the three appellants and to Ellen Patricia Anderson.

The probate of the estate proceeded normally for approximately 2 years. During that period two pertinent orders, among others, were entered: (1) August 2, 1963, order of solvency; (2) October 11, 1963, order for family allowance

[1]We are informed that probate proceedings in the matter of the estate of Anona F. Bonness are pending in separate proceedings in Kitsap County. No part of that record is before us, but the parties agree that Ms. Anderson was sole heir of her mother's estate.

of $600 per month, retroactive to April 21, 1963, and to continue for such period as was necessary to complete the probate. The family allowance amounted to $18,400 to its terminal date on November 9, 1965.

The major asset of the estate was an apartment complex, Town and Country Apartments, in which Mrs. Bonness resided. This apartment became the object of litigation over a rejected creditor's claim that was not resolved until January 23, 1968. It was this litigation that ostensibly delayed closing the estate and funding the trust. It was not until April 29, 1969, that Mrs. Bonness as executrix funded the trust by delivering to the Bank stocks valued at $26,139.57. This was accomplished after the apartment had been sold. The Bank formally accepted the trust on June 16, 1969.

Prior to the time the trust was funded, the Bank's role, aside from occasionally giving Mrs. Bonness and her attorney advice, consisted of the following:

(1) On November 9, 1965, an agreement was made with Mrs. Bonness that the estate would be kept open until the litigation was concluded and perhaps later, until there would be a "distinct advantage . . . in closing it up." Mrs. Bonness was to provide accountings to the Bank consisting of income tax returns and a statement of changes in assets.

(2) On August 16, 1967, the Bank, at the request of a title company, cosigned a mortgage against the Town and Country Apartments, permitting Mrs. Bonness to borrow some $12,340, presumably to be used for her living expenses.

It is undisputed that until the time of her death, Mrs. Bonness made no formal accounting of the assets of the estate, nor did she keep any records of any bank accounts or other receipts and disbursements of the estate. Instead, she appears to have made no separation of her own share of the community property from that of her husband's estate, nor was any segregation made between estate assets and those assets which passed to her outside of testator's will.

From the accounting rendered by the successor administratrix it appears, however, that Mrs. Bonness had disposed of assets amounting to some $72,375.52. In addition, it appears that she consumed two savings and loan accounts of $10,000 each, which it is claimed were survivorship accounts, as well as the $12,340 loan proceeds mentioned above.

This action was precipitated by a citation for an accounting issued by the court to the administratrix de bonis non at the request of appellants and the Bank. When the accounting was furnished, appellants filed several objections, which were heard on oral testimony. A majority of the objections were disallowed and furnish the basis for the appeal-in-chief. The administratrix has cross-appealed from the order directing the estate of Anona F. Bonness to pay to the trust the sum of $7,943.72. It is contended that the trial court lacked jurisdiction over her estate. Cross-appellant also objects to a finding that a savings account was community property, and to a ruling that costs of administration, the family allowance, and attorney's fees should be charged against the entire community estate of George J. and Anona F. Bonness. We first consider the cross-appeal.

The contention that the trial court lacked jurisdiction over the estate of Anona F. Bonness is without substantial merit. The estates of both spouses are pending before the Kitsap County Superior Court. Ellen Patricia Anderson was cited to account both as the administratrix de bonis non of the estate of George J. Bonness and also as executrix of the estate of Anona F. Bonness. The show cause citation was effective as a summons and complaint and vested jurisdiction over both the parties and the subject matter of both estates. See In re Estate of Wheeler, 71 Wn.2d 789, 431 P.2d 608 (1967). The ruling made was well within the broad jurisdiction and power of the superior court in matters of probate granted by RCW 11.02.010 and RCW 11.02.020. The latter statute enables the court to function even where the law is "inapplicable or insufficient or

doubtful, . . . " to the end that "such estates may be by the court administered upon and settled." Since the assets of the two estates were commingled, an accounting as to one would not be effective without an accounting of the other. The order was proper.

■ Cross-appellant also claims that the $26,139.57 in securities delivered to the trustee on April 29, 1969, was intended to be the total funding of the trust. This contention is contrary to a preponderance of the evidence. Even if this were shown to have been the intention of Mrs. Bonness and the Bank, it would not bind the trust beneficiaries. They were entitled to have the trust funded in a manner consistent with the will of George J. Bonness. The amount necessary to carry out his intention could only be determined after a full and final accounting.

■ Cross-appellant's contention that the costs of administration, attorney's fees and the family allowance should be charged only against George J. Bonness' half of the community property is based upon the general powers given Mrs. Bonness in the will. We have set forth the provision in the margin.[2] Admittedly, testator conferred upon his wife broad powers. These powers do not include, however, a specific authority to disregard the statutory direction that the expenses of administration and the family allowance be charged against both halves of the community. RCW 11.02.070. This statute codified the common law. *Thatcher v. Capeca*, 75 Wash. 249, 134 P. 923 (1913); *In re Estate of Guye*, 54 Wash. 264, 103 P. 25 (1909).

We do not believe such a general grant of power in the will should be sufficient to nullify the specific statutory

---

[2]Provision Eighth of George J. Bonness' will stated in part: "It is my intention that my executrix shall be empowered to do any act or deed in connection with my estate or the properties belonging thereto that I personally could do if living and I give and grant to my said executrix exclusive and complete control, dominion and possession of my estate and all assets thereof, including the right to invest and reinvest the funds and assets of the estate, and that my executrix shall act in connection with my estate and the properties thereof solely according to her discretion."

provision, and we are cited no authority which so holds. We are persuaded that the provision was inserted to enable the executrix to deal effectively with third persons as in the sale and investment of assets. It was not intended as a means whereby an executrix who is also a trust beneficiary could enhance her personal position to the detriment of other trust beneficiaries. We agree with the trial court, who observed: "I do not believe that language is intended to destroy the fiduciary obligation."

Finally, cross-appellant contends that one of two "Totten Trust" savings accounts, each one for $10,000, should have been treated as Mrs. Bonness' separate property, rather than community property as the court ruled it was.

George and Anona Bonness had created two mutual "Totten Trusts," pursuant to RCW 33.20.070.[3] On one such trust the account was in the name of "George J. Bonness, Trustee for Anona F. Bonness." There is no dispute that this account was properly determined to be the separate property of Mrs. Bonness, to which she was immediately entitled upon his death, in accordance with RCW 33.20.070. *See In re Estate of Madsen*, 48 Wn.2d 675, 296 P.2d 518 (1956). The dispute is over the characterization of the other trust, which was in the name of "Anona F. Bonness, Trustee for George J. Bonness." The statute makes no reference to the disposition of the proceeds when the beneficiary predeceases the trustee. Cross-appellant contends,

---

[3]RCW 33.20.070 provides:

"When any savings account shall be made in the name of any person in trust for another, in the event of the death of such trustee, the savings accounts, together with the dividends thereon, or any portion thereof shall be payable in conformity with the provisions of the trust agreement, if any.

"If such savings account in trust shall be made without any express trust agreement or the association shall have no other or further notice of the existence and terms of any regular and valid trust, in the event of the death of the trustee such account, together with the dividends thereon, or any portion thereof, shall be payable to the person for whom the account was made or, if such beneficiary be a minor or an incompetent, to his guardian, and his receipt or acquittance shall be a valid discharge of the obligation."

however, that the effect of establishing the two trusts at the same time evidences an intention by the parties to convert $20,000 of community assets into $10,000 separate property for each.

There are two reasons why this contention should be rejected. First, the presumption that property acquired during marriage in this state is community property is a strong presumption and may be overcome only by clear and convincing evidence. *In re Estate of Binge*, 5 Wn.2d 446, 105 P.2d 689 (1940); *see Berol v. Berol*, 37 Wn.2d 380, 223 P.2d 1055 (1950). The presumption should not be overcome on so slender a reed as an intention implied from the fact of establishing the accounts. *See American Sav. & Loan Ass'n v. Sawicki*, 150 Wash. 436, 273 P. 530, 275 P. 717 (1929). Secondly, where the beneficiary of a bank deposit trust dies, the trust ipso facto terminates. *See In re United States Trust Co.*, 117 App. Div. 178, 102 N.Y.S. 271, *aff'd*, 189 N.Y. 500, 81 N.E. 1177 (1907); 10 Am. Jur. 2d *Banks* § 399 (1963); T. Atkinson, *Law of Wills*, § 41 (2d ed. 1953). We conclude that the cross-appeal should be denied entirely.

With reference to the appeal-in-chief, we have concluded that some errors occurred in the accounting which require that the order be modified. Other assignments of error are not well taken and are discussed below.

We first discuss the date when the trust came into existence insofar as that date may define the relative duties of the Bank. The trial court found that the trust came into existence and that the Bank accepted the trust as of November 9, 1965. The Bank contends that it did not become trustee until it accepted the securities on April 29, 1969. Appellants also contend that April 29, 1969, should be the logical date on which the trust "began to function." The fixing of the date the trust commenced, in our judgment, has no bearing upon the accounting problems presented by the court. It bears solely upon the duties of the Bank to carry out the duties imposed upon them by the trust instrument.

■ As a general rule, a testamentary trust comes into existence and benefits accrue from the date of the settlor's death and no acceptance by the trustee is necessary. G. Bogert, *Trusts and Trustees*, § 150 (2d ed. 1965); 1 A. Scott, *Law of Trusts* § 35 (3d ed. 1967). As to the cotrustee Bank, however, no duties would arise with respect to the trust until it accepted assets of the trust or otherwise accepted its duties with respect to the trust assets. While no particular mode of acceptance is necessary, G. Bogert, *Trusts and Trustees*, § 150 (2d ed. 1965), we see no evidence which justifies the finding that an acceptance by the Bank was made prior to April 29, 1969, when assets were in fact accepted. Since the potential trust assets were subject to an administration over which the Bank had no authority, it is difficult for us to see how any of its actions or inactions prior to accepting the securities had any direct effect on the course of that administration. On the other hand, Mrs. Bonness, as executrix, was in sole control of the administration. Her duty as a fiduciary was to settle the estate in accordance with the will and Washington probate laws. Whether the accounting furnished by her successor shows that this duty was fulfilled, or whether any breach of her duties caused harm to appellants is the real issue before us.

■ It is clear to us that Mrs. Bonness' failure to keep proper records was a breach of her fiduciary duties as executrix, and in the final accounting rendered by her successor it was necessary to show that all assets expended by her complied with the terms of the will and the trust. Even a nonintervention executor is under a trust obligation to carry out the testamentary directions of the testator and follow the general laws of administration when such directions are lacking or insufficient. *In re Estate of Eberle*, 4 Wn. App. 638, 484 P.2d 478 (1971); RCW 11.68.030; *see In re Estate of Coffin*, 7 Wn. App. 256, 499 P.2d 223 (1972).

Although the statutory powers of a nonintervention executrix are broad (RCW 11.68.040) and the powers given Mrs. Bonness by her husband were extensive (*see* note 2), none of those powers relieved her of the duty to keep

records of all nonintervention transactions and properly account and transmit to the trustee the residue of the estate after expending those sums which it was permissible for her to consume under the will. *In re Estate of Eberle, supra.*

The amounts expended by Mrs. Bonness are ascertainable from the accounting furnished by the administratrix de bonis non. The problem rendering the accounting difficult was occasioned by failure of Mrs. Bonness to keep records which would segregate those separate assets which she was entitled to use without an accounting from those which were subject to administration.

Two major problems arose at the hearing concerning the accounting and the failure of Mrs. Bonness to segregate the assets. First, the Town and Country Apartments were sold for an amount greatly in excess of their appraised value. Second, certain securities had appreciated in value. Quaere: Should these capital gains and appreciations be allocated in the accounting to the trust or to Mrs. Bonness' community interest in the estate? Appellants claim that the trust was entitled to have these gains attributable to the trust to the extent of the deceased's community interest in them.

The trial court disagreed, and ruled on two alternative theories that the gains or appreciations belonged to Mrs. Bonness individually. Either the assets were intended as Mrs. Bonness' share of the community estate and were her distributive share of it, or the gains and appreciations were hers as income from the trust.

There is some justification for the first alternative, since the will gave Mrs. Bonness extensive power over the assets and over the investment and reinvestment thereof. However, since the trust took effect upon testator's death, as we noted above, and since no segregation of the assets was ever made, it would follow that the community estates of both parties should benefit equally by the capital gains and appreciations. Both spouses have individually a one-half interest in every item of the community property. *In re Estate of Patton,* 6 Wn. App. 464, 494 P.2d 238 (1972).

However, we think the court's ruling should be sustained on the theory that under the will (1) Mrs. Bonness was entitled to all income from the trust; (2) to the extent that the capital gains or appreciations on the stock constituted income or to the extent they might constitute invasions of principal, the will vested in the Bank broad powers to treat principal as income and to invade the principal for the necessary support of Mrs. Bonness; (3) to the extent that the trust was not operative at the time the assets were dissipated by Mrs. Bonness the evidence as to the lack of income available for Mrs. Bonness' support during the administration warrants a conclusion that those expenditures by her were justifiably ratified by the Bank after it accepted the trust.

In this connection it is necessary to an understanding of this theory to point out that the Bank, in whom the will vested sole discretion to invade the principal of the trust for the support of Mrs. Bonness, does not object to the ruling. This is, we think, the equivalent of ratification of such invasions. The evidence is sufficient to sustain the ruling and the ratification. The entire assets subject to administration were not producing income. It would be unreasonable, in light of the testator's intention that Mrs. Bonness be adequately supported in the usual style, to require her to depend upon her separate resources for support. Support trusts are frequently construed so as not to depend upon the collateral resources of the beneficiary. 2 A. Scott, *Law of Trusts* § 128.4 (3d ed. 1967). Since the intention of the testator must control, it is obvious that the ruling on these gains and appreciations should favor Mrs. Bonness individually,[4] and that the Bank properly declined to object to the ruling. *See* RCW 11.104.020, which provides:

---

[4] Pertinent provisions of the will are: "Whenever in the exercise of its sole discretion the corporate trustee is of the opinion that the income distributed to my wife is insufficient for her proper care, maintenance and support, it is authorized, empowered and directed to invade and use the corpus of the trust for her proper care, maintenance and support until such shall have become exhausted by reason of such invasion.

(1) A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or partly to each:

(a) in accordance with the terms of the trust instrument, notwithstanding contrary provisions of this chapter;

(b) in the absence of any contrary terms of the trust instrument, in accordance with the provisions of this chapter; or

(c) if neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as of those entitled to principal, and in view of the manner in which men of prudence, discretion and intelligence would act in the management of their own affairs.

(2) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee has made an allocation contrary to a provision of this chapter.

In light of this statute and the broad discretionary powers granted the trustees by testator's will, the allocations ratified by the Bank appear to be totally justified.

To further buttress this ruling, the trial court found on substantial evidence that the family allowance was insufficient to support Mrs. Bonness in the manner contemplated by the will. We are not persuaded that this result permits the estate of Mrs. Bonness to unreasonably profit from the breach of her fiduciary duty. The ultimate determination of whether or not her breach of this duty resulted in any harm to the other trust beneficiaries must rest upon

"...

"The trustees may treat as principal, or as income, or as partly one and partly the other, as to them shall seem best, all realized appreciation in the value of stocks, bonds, securities and other property forming a part of the trust estate resulting from the sale or disposition thereof, and its or their decision with respect thereto shall be conclusive on all parties interested in the trusts."

whether trust assets were dissipated during administration of the estate to an extent not contemplated by the will. Allocating to her estate individually the capital gain on the sale of the apartment and appreciations on the stock follows, rather than disregards, the intention of the testator that she be supported from the trust in the manner to which she was accustomed.

We do believe, however, that her personal creditor's claim for $5,515.77 should have been treated as though she had received payment. The claim was judicially approved in 1964. Mrs. Bonness was clearly acting in her fiduciary capacity as executrix with reference to the assets. Since she failed to keep records, had 7 years to reimburse herself, and did consume substantial assets during that period, all doubts upon this item should be resolved against her and in favor of the trust. *See* 2 A. Scott, *Law of Trusts* § 172 (3d ed. 1967).

Another item in contention over the accounting concerns the trial court's ruling that a savings account taken out by Mr. and Mrs. Bonness when they resided in Oregon carried survivorship rights. Terms of the signature card for the account in the Pacific First Federal Savings and Loan Association are set forth in the margin.[5] The card describes the account as "jointly owned," does not contain express rights of survivorship, but gives either party the right to withdraw from the account and releases the financial institution

---

[5]The account signature card stated: "The undersigned hereby mutually agree that the above numbered savings account in Pacific First Federal Savings and Loan Association, and all of the accumulations thereon, shall be *jointly owned* by the persons above named and that either or any of us shall have the right to withdraw or assign the same or any part thereof and that each of us shall enjoy the same right therein and thereto as though said savings account had been opened solely in the name of the first one of us so exercising such rights in connection therewith and the receipt or acquittance of either or any one of us shall constitute a full release of said Association regardless of the death or disability of either or any of us.

"Specimen signatures are shown below and the Association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature." (Italics ours.)

where payment is made to either signator "regardless of the death or disability of either or any of us."

The name of the account is "George J. Bonness or Anona F. Bonness." The card shows an Oregon address and the date, January 6, 1953. The card also bears the notation, "Trans. to Seattle from Portland, 1/11/57." It was approximately the time when Mr. and Mrs. Bonness commenced their permanent residence in Washington state.

Based upon evidence that Mr. and Mrs. Bonness lived in Oregon prior to moving to Washington, and transferred this account to the Seattle branch of the Pacific First Federal Savings and Loan Association, the trial court ruled that the account must be characterized in accordance with Oregon law. The court concluded that the account card was sufficient to establish survivorship rights in Oregon.

Appellant contends that Washington law should apply, but that according to either Washington or Oregon law, the account would not create survivorship rights in Mrs. Bonness. We disagree, and conclude that the account was sufficient to establish survivorship rights under either Washington or Oregon law.

■ It should be noted initially that the precise issue involving an account card in the form noted in note 5 has not been authoritatively construed in either Washington or Oregon. However, in both states the intention of the depositors controls. *In re Estate of Ivers*, 4 Wn.2d 477, 104 P.2d 467 (1940); *Beach v. Holland*, 172 Ore. 396, 142 P.2d 990, 149 A.L.R. 866 (1943). It seems evident from those decisions that both extrinsic evidence of the intent and the language used on the account card are important in determining the intention.

The only extrinsic evidence pertinent to the question was the fact of opening the account in Oregon in 1953 and its transfer without change of the account card in 1957. We are thus left only with the language of the card by which to ascertain the intention of the depositors.

Before analyzing the account card, it is necessary that we mention the Oregon statute authorizing the type of account

in issue as well as the Washington statute granting similar authority to savings and loan associations in this state. Both statutes are set forth in the margin.[6] Much of the early controversy over these types of statutes and their intended purpose has been exhaustively treated in D. Kepner, *The Joint and Survivorship Bank Account—A Concept Without A Name*, 41 Cal. L. Rev. 596 (1953) (hereinafter cited as Kepner), and R. Wellman, *Joint and Survivor Account in Michigan—Progress Through Confusion*, 63 Mich. L. Rev. 629 (1965). One pertinent point of controversy was the effect these statutes had on fixing the ownership of the account as distinguished from their obvious bank protecting role.

 Kepner at 622 stated:

It was early argued that the joint bank account statute, which provides that a deposit made in the name of two or more persons and payable to either or the survivor shall become the property of such depositors as joint tenants, was enacted for the sole purpose of protecting the bank. This view has been rejected by all of the tribunals which have construed such an enactment on the ground that it was the legislative intent not only to pro-

---

[6]The Oregon statute, Oregon Compiled Laws, Annotated, section 41-603, which was in effect in 1953, provided: "An association may issue shares or obligations to or in the name of any two or more persons when said persons shall make a joint application therefor and expressly authorize and direct the association to pay the same when withdrawn or matured to or upon the order of any one of said persons. Said shares or obligations when so issued shall, with all of the earnings thereon, become the property of such persons as joint tenants and the association may pay withdrawal or matured value of such shares or obligations in whole or in part to any of said persons, whether the others be alive or not, and the receipt or acquittance of the persons so paid shall be a valid and sufficient release and discharge of such association from all of the persons to whom the same were originally issued, their heirs and assigns, for any payment so made."

RCW 33.20.030 provides:

"Savings may be received by an association in the name of two or more members as joint tenants with right of survivorship. In such case, payment to either member shall discharge the association from liability upon such savings account and upon the death of either of such joint tenants, the association shall be liable only to the survivor or survivors."

tect banks in the payment of deposits but also to fix the ownership of the funds of the persons named as joint tenants.

(Footnotes omitted.) We agree with this statement and would so construe both the Oregon and Washington statutes. We next must· consider the effect of the language of the account card utilized in this case. We note that the language follows closely the Oregon statute but not the Washington statute. The courts, passing úpon this question, generally agree that opening the account alone in the statutory language creates a presumption that the account was to change the ownership rights to the fund, including the right of survivorship. *In re Estate of Peterson,* 182 Wash. 29, 45 P.2d 45 (1935); *Munson v. Haye,* 29 Wn.2d 733, 189 P.2d 464 (1948); Kepner, note 155, at 622.

Where the statutory language is not followed and where the account does not "in any manner provide for survivorship the account is not one which in form is to be paid to either or the survivor, and consequently does not come within the statute." (Footnote omitted.) Kepner at 623.

■■■ While we agree with this statement, at the same time we reject the view that the presumption of survivorship does not arise unless express language of survivorship is used in the account. If the account card, *in any manner,* evidences an intention that the account will be owned by the surviving depositor, we think the presumption of survivorship should prevail. *In re Estate of Ivers, supra.* There are many forms by which such survivorship rights may be implicitly expressed. The account card in question gave either party the exclusive right to withdraw from the account as though it was "solely" owned. This right was not limited to the lifetime of the joint depositor. When these facts are coupled with the release of liability of the association upon payment to either without regard to death or disability, the intention to create survivorship rights is apparent and in our view should be presumed, absent countervailing evidence not present here. *Munson v. Haye, supra.*

We think the modern policy favors the avoidance of probate administration by use of joint tenancy survivorship rights. *See* RCW 64.28.010 where such ownership rights in 1961 were legislatively extended to all types of real and personal property. We conclude that the account should be construed as granting survivorship rights under either Washington or Oregon law.

Finally, appellants contend that an attorney's fee should have been allowed them pursuant to RCW 11.76-.070. While the allowance of attorney's fees under the statute is discretionary, persons contesting an accounting are held to be entitled to such an award to the extent that the items of the account which are disapproved benefit the estate. *In re Estate of Hamilton*, 73 Wn.2d 865, 441 P.2d 768 (1968). In our view, reasonable attorney's fees should be allowed, both for trial and on the appeal, for the contested item which by this opinion is disapproved. While the benefit to the estate is admittedly small, the contested accounting was largely occasioned by the failure of the executrix to keep adequate records of the transactions in which she engaged during her nonintervention administration. Such an award should be determined by the trial court and allowed in an order to be entered following the remand.

Two other errors in the accounting which were called to our attention by the Bank should be corrected upon remand. One checking account with the Seattle-First National Bank for $3,588.29 and the Hewitt Rubber Pension account of $3,118.60 were concededly assets which passed outside of probate and should not have been treated as assets of the estate. Also, there is a $100 error in the addition of all assets which passed outside the will.[7] The total should be $64,410.64, rather than $64,510.64.

The order appealed from should be modified so as to be consistent with this opinion. The estate should bear costs of all parties on appeal.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied June 18, 1975.

Review denied by Supreme Court September 5, 1975.

---

[7]See page 17 of the brief of cotrustee Bank.